# UNITED STATES OF AMERICA *v.* ANTIKAMNIA CHEMICAL COMPANY.

## ERROR TO AND APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 118.   Argued December 9, 1913.—Decided January 5, 1914.

Where the validity of regulations made by officers to whom power to make them is delegated by the Food and Drugs Act of 1906 is denied, an authority exercised under the United States is drawn in question, and not merely the construction of the statute, and this court has jurisdiction to review the judgment of the Court of Appeals of the District of Columbia. *Steinmetz* v. *Allen,* 192 U. S. 543, followed, and *United States ex rel. Taylor* v. *Taft,* 203 U. S. 461, distinguished.

In this case the question of authority of the officers to whom the power to make regulations is delegated by the Food and Drugs Act is substantial and not frivolous.   *United States* v. *Grimaud,* 220 U. S. 506 distinguished.

The purpose of the Food and Drugs Act of 1906 is to secure purity of food and drugs and to inform purchasers of what they are buying. Its provisions are directed to that purpose and must be construed to effect it.

The power given by § 3 of the Food and Drugs Act to the specified heads of departments to make regulations is an administrative power and not one to alter, or add to, the act, and the extent of the power must be determined by the purpose of the act and the difficulties its execution might encounter.

Regulation No. 28 for the enforcement of the Food and Drugs Act requiring labels to state not only what drugs contain but also what the contents are derivatives of, is within the delegated power of the act and does not enlarge or alter its provisions.

It is a violation of the Food and Drugs Act of 1906 and of Regulation No. 28 to label tablets as containing acetphenetidin without stating that acetphenetidin is a derivative of acetanilid.

The Food and Drugs Act itself requires that not only primary substances be labelled but also their derivatives, and no regulations are necessary to support this requirement.

The purpose of a statute is the ever insistent consideration in its interpretation, and this court will not attribute to a statute so

important as the Food and Drugs Act the defect of ineffectiveness as
to its execution.

The fact that a statute has penal character does not mean that it
should not be given its reasonable intendment.

37 App. D. C. 343, reversed.

THE facts, which involve the construction of provisions
of the Food and Drugs Act of 1906 in regard to labelling
drugs, are stated in the opinion.

*The Solicitor General,* with whom former *Solicitor General Lehmann* and *Mr. Karl W. Kirchwey* were on the
brief, for the United States:

This court has jurisdiction. *Smoot* v. *Heyl,* 227 U. S.
518.

The regulation violated was within the power of the
Secretaries to make uniform rules and regulations, and
its violation constituted a misbranding within the meaning of the act.

Debates in Congress may be looked to in order to show
the evil which Congress sought to remedy. *American
Twine Co.* v. *Worthington,* 141 U. S. 468; *Binns* v. *United
States,* 194 U. S. 486; *Blake* v. *National Banks,* 23 Wall.
307; *Holy Trinity Church* v. *United States,* 143 U. S. 457;
*Jennison* v. *Kirk,* 98 U. S. 453.

This court will recognize well-known scientific facts
upon which Congress acted. *Austin* v. *Tennessee,* 179
U. S. 343; *Muller* v. *Oregon,* 208 U. S. 412; *Schollenberger*
v. *Pennsylvania,* 171 U. S. 1.

Permitting name of derivative alone to be stated on
label would defeat purpose of act.

Reasonably construed, § 8 of the act requires a statement of the name of the parent substance; and the regulation to that effect was purely administrative.

The act is not penal for purposes of strict construction.
*Cliquot's Champagne,* 3 Wall. 114; *443 Cans of Egg Product,*
226 U. S. 172; *Hipolite Egg Co.* v. *United States,* 220 U. S.

45; *N. Y., N. H. &c. R. R.* v. *Int. Com. Comm.*, 200 U. S. 361; *Smythe* v. *Fiske*, 23 Wall. 374; *Taylor* v. *United States*, 3 How. 197; *United States* v. *Five Boxes of Asafoetida*, 181 Fed. Rep. 561; *United States* v. *Hodson*, 10 Wall. 395; *United States* v. *Stowell*, 113 U. S. 1.

Even penal statutes should be construed to effectuate the legislative intent. *Northern Securities Co.* v. *United States*, 193 U. S. 197; *United States* v. *Harris*, 177 U. S. 305; *United States* v. *Lacher*, 134 U. S. 624.

The only alternative is that § 8 was left incomplete and the Secretaries were intended and authorized to fill in the outline. *Pickett* v. *United States*, 216 U. S. 456; *United States* v. *Hartwell*, 6 Wall. 385.

The power to make regulations having the force of law may be conferred by general language. *Bong* v. *Campbell Art. Co.*, 214 U. S. 236; *Buttfield* v. *Stranahan*, 192 U. S. 470; *Caha* v. *United States*, 152 U. S. 211; *Coopersville Creamery Co.* v. *Lemon*, 163 Fed. Rep. 145; *In re Kollock*, 165 U. S. 526; *Roughton* v. *Knight*, 219 U. S. 537; *United States* v. *Bailey*, 9 Pet. 238; *West* v. *Hitchcock*, 205 U. S. 80.

The power delegated to the Secretaries was constitutional. *Buttfield* v. *Stranahan, supra; Field* v. *Clark*, 143 U. S. 649; *In re Kollock*, 165 U. S. 526; *St. Louis & I. M. Ry.* v. *Taylor*, 210 U. S. 281; *Union Bridge Co.* v. *United States*, 204 U. S. 364; *United States* v. *Breen*, 40 Fed. Rep. 402; *United States* v. *Grimaud*, 220 U. S. 506.

The statement on the label of each package that no acetanilid was contained therein was false and misleading.

A statement may be misleading under § 8, although literally true. *Brina* v. *United States*, 179 Fed. Rep. 373; *Frank* v. *United States*, 192 Fed. Rep. 864; *Schraubstadter* v. *United States*, 199 Fed. Rep. 568; *United States* v. *Morgan*, 181 Fed. Rep. 587; *United States* v. *100 Cases of Apples*, 179 Fed. Rep. 985; *United States* v. *Scanlon*, 180 Fed. Rep. 485; *United States* v. *75 Boxes of Pepper*, 198

Fed. Rep. 934; *United States* v. *Ten Barrels of Vinegar*, 186 Fed. Rep. 399.

The statement was calculated to suggest that no derivative of acetanilid was contained in the tablets.

Section 8 was intended to cover just such deceptions as to identity. *United States* v. *Johnson*, 221 U. S. 488.

*Mr. D. W. Baker*, with whom *Mr. Joseph C. Sheehy, Mr. Frank J. Hogan* and *Mr. Wilton J. Lambert* were on the brief, for defendant in error and appellee:

The libel fails to charge a misbranding of the article therein within the meaning of the act of June 30, 1906.

The act gives neither authority nor power to the several Secretaries to promulgate a regulation requiring the name of the parent substance to be added.

The statement that no acetanilid is contained in the drug is neither misleading nor false. In support of this contention, see *443 Cases of Egg Product* v. *United States*, 226 U. S. 172; *United States* v. *Antikamnia Co.*, 37 App. D. C. 343; *Hipolite Egg Co.* v. *United States*, 220 U. S. 45; *United States* v. *Johnson*, 177 Fed. Rep. 313; *Huntington* v. *Attrill*, 146 U. S. 667; *Chouteau* v. *United States*, 102 U. S. 603; *Boyd* v. *United States*, 116 U. S. 616; *Coffey* v. *United States*, 116 U. S. 436; *Lees* v. *United States*, 150 U. S. 476; *Hepner* v. *United States*, 213 U. S. 111; *United States* v. *Harris*, 177 U. S. 305; *United States* v. *Lacher*, 134 U. S. 629; *Northern Securities Co.* v. *United States*, 193 U. S. 358; *Todd* v. *United States*, 158 U. S. 282; *Fozer* v. *United States*, 52 Fed. Rep. 919; *United States* v. *Traction Co.*, 34 App. D. C. 597; *Morrill* v. *Jones*, 106 U. S. 566; *United States* v. *200 Barrels of Whiskey*, 95 U. S. 751; *United States* v. *Three Barrels of Whiskey*, 77 Fed. Rep. 965; *Taylor* v. *Kercheval*, 82 Fed. Rep. 504; *United States* v. *Symonds*, 120 U. S. 46; *Williamson* v. *United States*, 207 U. S. 425; *Payne* v. *Railway Publishing Co.*, 20 App. D. C. 581; *United States* v. *Eaton*, 144 U. S. 677; *United States* v.

.Sandfuhr, 145 Fed. Rep. 49; United States v. Grimaud, 220 U. S. 506; Standard Oil Co. v. United States, 222 U. S. 77; United States v. George, 228 U. S. 14; Brown v. Piper, 91 U. S. 37; Manufacturing Co. v. Adkins, 36 Fed. Rep. 554; Engraving Co. v. Hoke, 30 Fed. Rep. 444; Lagler v. Bye, 42 Ind. App. 592; Diversey v. Smith, 103 Illinois, 390; Commonwealth v. Crane, 158 Massachusetts, 219; State v. Mann, 2 Oregon, 241; Brown v. State, 131 Wisconsin, 543.

See page 3, Pharmacopœia of the United States of America, defining Acetanilid and Acetphenetidin, and page 8, United States Dispensatory, giving uses and effects of Acetanilid and Acetphenetidin.

See also Report No. 301 of Senate Committee on Manufactures, 58th Cong., 2d Sess., Jan. 15, 1904, accompanying Senate Bill 198, relating to "Adulteration of Foods, etc.," and containing statements of Dr. Wiley, of Department of Agriculture, relative to phenacetine (Acetphenetidin) and Acetanilide and hearings before Senate Committee, January 20, 1903, on H. R. 3109, being the Pure Food and Drugs Act, containing statements relative to the use of Acetanilid as an adulteration of or substitution for Acetphenetidin (Phenacetine).

An examination of 2350 judgments filed by the Agricultural Department up to February 1, 1913, shows that in no case, except the instant case, does the libel, indictment, or information charge a violation of a rule or regulation of the Department.

In No. 438, The Ice Cream Case, United States v. Bishof, there was charged a violation of the law and not any regulation of the Department.

Regulations have been held valid not under the Pure Food Act, but under act of Congress, March 3, 1903.

In Hurdle Brand Holland Gin, No. 807, the libel charged a violation of the law and not of any regulation. The court held the label was sufficient under the law.

The act of June 3, 1903, has been before the court on

various occasions, some of the decisions holding the power given valid, others that it is void.   See *United States* v. *Frank,* 189 Fed. Rep. 195; *United States* v. *St. Louis Coffee Mills,* 189 Fed. Rep. 191; *Coopersville Creamery Co.* v. *Lemon,* 163 Fed. Rep. 145.

See also *United States* v. *11,150 Pounds of Butter,* 195 Fed. Rep. 665, holding that the Secretary of the Treasury cannot, by his regulations, alter or amend a revenue law. All he can do is to regulate the mode of proceeding to carry into effect what Congress has enacted.   *St. Louis Bridge Co.* v. *United States,* 188 Fed. Rep. 191.

The admission of the Solicitor General that there cannot be a prosecution without this regulation is an admission that there cannot be an offense without this regulation, and therefore the regulation adds something to the statute that is not there.   *McDermott* v. *Wisconsin,* 228 U. S. 115, distinguished.

The regulations in no sense have the force of law; at most they form a rule of conduct, which if not followed will place a person in a position where the Secretary will order the District Attorney to proceed under the law to prosecute for a violation of the law.

MR. JUSTICE McKENNA delivered the opinion of the court.

Libel for the seizure and condemnation of certain drugs under the provisions of the act of Congress of June 30, 1906, commonly known as the Food and Drugs Act, c. 3915, 34 Stat. 768.

The libel alleges that the drugs are in the possession and custody of The Wholesale Drug Exchange, a body corporate, at a numbered place in the City of Washington.

The drugs, it is alleged, are intended to be used for the cure and mitigation and prevention of diseases of man. They are described as follows:

"Twenty packages, more or less, of said drug, labelled and branded as follows: 'Antikamnia Tablets, Contain 305 grains of acetphenetidin, U. S. P. per ounce, Guaranteed by the Antikamnia Chemical Company, under the Food and Drugs Act, June 30, 1906, U. S. Serial Number 10. The Antikamnia tablets in this original ounce package contain no acetanilid, antifebrin, antipyrin, morphine, opium, codein, heroin, cocaine, alpha or beta eucaine, arsenic, strychnine, chloroform, cannabis indica, or chloral hydrate, Antikamnia tablets five grains. One ounce Antikamnia Tablets. Manufactured in the United States of America by the Antikamnia Chemical Co., St. Louis, U. S. A.'

"Also seventy other packages, more or less, of said drug, labelled and branded as follows: 'Antikamnia and Codein Tablets. Contain 296 grains acetphenetidin, U. S. P. per ounce. Contain 18 grains sulp. codein per ounce. Guaranteed by the Antikamnia Chemical Company, under the Food and Drugs Act, June 30, 1906. U. S. Serial Number 10. The Antikamnia and Codein tablets in this original ounce package contain no acetanilid, antifebrin, antipyrin, morphine, opium, heroin, cocaine, alpha or beta eucaine, arsenic, strychnine, chloroform, cannabis indica, or chloral hydrate. One ounce Antikamnia and Codein Tablets. Manufactured in the United States of America by the Antikamnia Chemical Co., St. Louis, U. S. A.'

"Also ten other packages, more or less, of said drug, labelled and branded as follows: 'Antikamnia and Quinine Tablets. Contain 165 grains acetphenetidin, U. S. P. per ounce. Guaranteed by the Antikamnia Chemical Company under the Food and Drugs Act, June 30, 1906, U. S. Serial Number 10. The Antikamnia and Quinine Tablets in this original ounce package contain no acetanilid, antifebrin, antipyrin, morphine, opium, codein, heroin, cocaine, alpha or beta eucaine, arsenic, strychnine,

chloroform, cannabis indica, or chloral hydrate. One ounce Antikamnia and Quinine Tablets. Manufactured in the United States of America by the Antikamnia Chemical Co., St. Louis, U. S. A.'"

The ground of confiscation and condemnation alleged is that all of the packages of the drugs contain a large quantity and proportion of acetphenetidin, which, it is alleged, is a derivative of acetanilid, and that under the provisions of the act of Congress and of the regulations lawfully made thereunder it is provided and required that the label on each of the packages shall bear a statement that the acetphenetidin contained therein is a derivative of acetanilid; and yet, it is alleged that each and all of the packages fail to comply with such provisions.

It is also alleged that the packages are further misbranded, in that the labels thereon are false and misleading, for the reason that each and all of them bear the statement that no acetanilid is contained therein, and that the statement imports and signifies that there is no quantity of any derivative of acetanilid contained in the drug.

A warrant of arrest was issued upon which the marshal duly made return that he had arrested twenty packages of Antikamnia tablets, ten packages of Antikamnia quinine tablets and sixty-three packages labeled "Antikamnia and Codein Tablets," and otherwise duly executed the warrant.

The Antikamnia Chemical Company, appellee and defendant in error, alleging itself to be the owner of the drugs, petitioned to be made a defendant in the libel. The petition was granted, and the company thereupon filed the exceptions to the libel. The exceptions negative in detail the charges of the libel and assert conformity in the labelling of the packages to the act of Congress of June 30, 1906, 34 Stat. 768, p. 770, quoting its eighth section as follows: ". . . . or if the package fail to bear a statement on the label of the quantity or proportion of

any alcohol, morphine, opium, cocaine, heroin, alpha or beta eucaine, chloroform, cannabis indica, chloral hydrate, or acetanilid, or any derivative or preparation of any such substances contained therein." And it is averred that the act does not provide that there should be added to any derivative of any of the substances contained therein the name of the parent substance, and the act cannot be added to or enlarged by requiring the company, to add to the name of a known article, the fact that the article is a derivative of any of the substances mentioned in the act. It is averred, therefore, that the packages are not misbranded and that the statement on the labels that no acetanilid is contained therein is in no way false or misleading because the libel does not allege that there is acetanilid in the packages, and, therefore, the statement instead of being false and misleading is, according to the allegations of the libel, true.

The exceptions were sustained and the libel dismissed.

It was stipulated that Food Inspection Decision No. 112, issued January 27, 1910 by the United States Department of Agriculture was considered by the court upon the hearing of the cause and should be included in and be considered part of the record on appeal.

The decision quotes § 8 of the act, states that the Attorney General, in an opinion rendered January 15, 1909, held that a derivative is a substance so related to one of the specified substances "that it would be rightly regarded by recognized authorities in chemistry as obtained from the latter 'by actual or theoretical substitution,' and it is not indispensable that it should be actually produced therefrom as a matter of fact;" further that the labelling of derivatives, as prescribed by § 8, is a proper subject conferred upon the Department by § 3, and that a rule or regulation requiring the name of the specified substance to follow that of the derivative would be in harmony with the general purpose of the act, and an

appropriate method by which to give effect to its provisions.

In conformity to this opinion, Regulation 28 of the Rules and Regulations for the enforcement of the Food and Drugs Act was amended as follows: ". . . Acetanilide (antifebrine, phenylacetamide). Derivatives—Acetphenetidine, . . . (g) In declaring the quantity or proportion of any of the specified substances the names by which they are designated in the act shall be used, and in declaring the quantity or proportion of the derivatives of any of the specified substances, in addition to the trade name of the derivative, the name of the specified substance shall also be stated, so as to indicate clearly that the product is a derivative of the particular specified substance."

The decree of the Supreme Court of the District dismissing the libel was affirmed by the Court of Appeals.

The case is not in very broad compass, though the arguments of counsel are somewhat elaborate. The libel is prosecuted for the condemnation of one hundred packages of Antikamnia tablets as being misbranded in violation of the Food and Drugs Act of June 30, 1906, c. 3915, 34 Stat. 768. The tablets contain acetphenetidin and the labels so state, and the proportion of the substance. It is a derivative of acetanilid, but the labels do not so state but do state that the tablets contain no acetanilid. And these omissions, it is contended by the Government, constitute a violation of the statute and of Regulation No. 28 as amended. The chemical company contends that the first statement is not required by the law and that the second statement is true, and therefore cannot be false or misleading.

Preceding the discussion of these contentions a question of jurisdiction is presented by the chemical company and a motion to dismiss is made on the ground that only the construction of the statute is involved in the decision of

the court below. The company also moves for an affirmance of the judgment on the ground that the appeal is' frivolous. *Contra* the Government contends that the Court of Appeals held invalid the regulation requiring the name of the primary substance as well as that of the derivative to be stated on the label; and that there is not only drawn in question, but so far denied, an authority exercised under the United States. We concur in this view. The validity of the regulation was and is denied. Its validity may, indeed, rest on the statute, but so did the validity of the rule of the Patent Office passed on in *Steinmetz* v. *Allen*, 192 U. S. 543. We there said (p. 556) of a rule of practice established by the Commissioner of Patents under a section of the Revised Statutes, "It thereby became a rule of procedure and constituted, in part, the powers of the primary examiner and Commissioner. In other words, it became an authority to those officers, and, necessarily, an authority 'under the United States.' Its validity was and is assailed by the plaintiff in error. We think, therefore, we have jurisdiction, and the motion to dismiss is denied." *United States ex rel. Taylor* v. *Taft, Secretary of War*, 203 U. S. 461, is not in antagonism to this ruling. In that case the relator was dismissed from the public service by an order of the Secretary of War as representative of the President. She sought restoration by mandamus. It was denied and she brought the case to this court on the ground that the validity of an authority exercised under the United States was drawn in question. Dismissing the case, this court said that as she did not question the authority of the President or his representative to dismiss her but contended only that certain rules and regulations of the civil service had not been observed, the validity of an authority exercised under the United States was not drawn in question but only the construction and application of regulations of the exercise of such authority. On p. 465 it was said

*Steinmetz* v. *Allen* was not to be contrary, "for there the validity of a rule constituting the authority of certain officers in the Patent Office was drawn in question."

Motion to dismiss is denied.

Joined with the motion to dismiss, we have seen, was a motion to affirm on the ground that the question of the authority of the Secretaries to make the regulation is frivolous in view of the decisions in *United States* v. *Grimaud,* 220 U. S. 506; *Williamson* v. *United States,* 207 U. S. 425 and other cases. How far this contention is tenable will be developed as we proceed with the consideration of the act and the power of the Secretaries under it.

The purpose of the act is to secure the purity of food and drugs and to inform purchasers of what they are buying. Its provisions are directed to that purpose and must be construed to effect it.

Section 3, 34 Stat. 768, gives the Secretary of the Treasury, the Secretary of Agriculture and the Secretary of Commerce and Labor, power to "make uniform rules and regulations for carrying out the provisions" of the act and the power to collect specimens of foods and drugs offered in interstate and foreign commerce. It adopts the definitions of the United States Pharmacopoeia or National Formulary and provides (§ 8, 34 Stat., p. 770) that the term "misbranded" as used in the act "shall apply to all drugs . . . the package or label of which shall bear any statement, design or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular." And, further, in case of drugs, an article shall be deemed to be misbranded "if the package fail to bear a statement on the label of the quantity or proportion" of certain enumerated substances "or acetanilid, or any derivative or preparation of any such substances contained therein."

These are the applicatory provisions. How are they to be construed?

First, as to the power of the Secretaries. It is undoubtedly one of regulation only—an administrative power only—not a power to alter or add to the act. The extent. of the power however, must be determined by the purpose of the act and the difficulties its execution might encounter. The fact that a council of three Secretaries of governmental departments was given power to make the rules and regulations for the execution of the law shows how complex the matters dealt with were considered to be, and the care that was necessary to be taken to guard against their defeat or perversion. The composition of drugs is a matter of technical skill, their denomination often by words of scholastic origin, conveying no meaning to the uninformed, their uses and abuses learned only by experience, beneficial or evil. It was this experience that the law sought to avail itself of and to avail itself against the ever increasing powers of the laboratory or the disguises of a technical nomenclature. Hence the provision of the law that the term "drug" as used in the act shall include all medicines and preparations recognized in the United States Pharmacopoeia or National Formulary for internal or external use, and hence also the provision that a drug or food product is misbranded in case it fails to bear a statement on the label of the quantity or proportion of certain enumerated substances, including acetanilid, "or any derivative or preparation of any such substance contained therein." Experience had demonstrated the quality of those substances, their effects had become common knowledge; their names, therefore, were all the warning it was necessary for the law to give. But derivatives of them might, probably would, be of their quality, so derivatives of them were to be guarded against, and the law hence further provided that the labels on them should state the "quantity or proportion" of "any derivative or preparation" of them. This much is clear—there is no obscurity in the words and purpose of the law. The

query then occurs, such being the words and purpose, if the quantity or proportion of the substances or any derivative or preparation of them must be stated, is it administrative of the law or additive to it to require by regulation that not only the name of the derivative or preparation be stated but from what substance derived or of what it is a preparation? It certainly cannot be said that the purpose of the law is not exactly fulfilled by the regulation. If it fulfills the purpose of the law it cannot be said to be an addition to the law, unless, indeed, it can be contended that the law provided a means for its defeat by the easy device of mysterious names. There is illustration in the present case. What information does the use of the word "acetphenetidin" convey to anybody of its good or evil origin? If it be said that the like question may be asked of any of the primary substances, we reply that they are the precautions of the law and adopted as such because they had demonstrated themselves, the value of their use, the detriment of their abuse, and it was believed that their names would carry no deception.

But let us turn from the power of the Secretaries to the law itself and inquire if it needs the assistance of a regulation. It is the contention of the Government that it does not, that its requirement that the primary substances should be labelled and that their derivatives should be labelled means, necessarily, that it should be stated of what they are the derivatives to make the warning of the labels complete. A great deal of what we have said in discussing the power of the Secretaries applies to this contention and supports it. The purpose of the law is the ever insistent consideration in its interpretation. The purpose is to prevent the surreptitious sale of certain noxious drugs or their derivatives, the latter supposedly partaking of the quality of parent article and as effective of evil consequences. This being the purpose, did the law leave it unexecuted? We cannot attribute to it such

defect, and a serious defect it might be.   Nor can we consider as a case of omission that which involves so definitely the mischief which was intended to be redressed and which is fairly within the language of the law.   And we say this without regard to the various illustrations contained in the Government's brief of the deceptions which can be practiced by using the name of the derivative alone, for the chemical company insists that we may not, in the absence of allegations and proof, look for knowledge in the encyclopedias, or medical lexicons or to trade practices for trade disguises, actual or possible.   It is not necessary to enter upon the challenged ground. The law furnishes its own tests of what the labels should reveal, and we may grant, for the argument's sake, as contended, that it has penal character; but this does not mean that it should not be given its reasonable intendment. There is no hardship in this either to the manufacturer or the seller of drugs.   They surely know what they make or vend—know whether it is primary or of what a derivative—and the law requires only that they put their knowledge on the labels for the information of purchasers.   No serious burden is thereby imposed on honest business. Indeed, it makes the label on the packages an assurance as well as a warning and benefits all concerned, manufacturer, seller and purchaser.   And this is the interest of the public health.

*Decree reversed and cause remanded with direction to reverse the decree of the Supreme Court and remand the cause with direction to overrule the exceptions to the libel.*