**MORGAN et al. v. NOLAN, United States Atty.**

No. 1430.

District Court, S. D. Indiana, Indianapolis Division.

April 7, 1933.

Pickens, Davidson, Gause, Gilliom & Pickens, of Indianapolis, Ind., for plaintiff.

Val Nolan, U. S. Atty., of Evansville, Ind., and J. S. Bohannon, of Washington, D. C., for defendant.

BALTZELL, District Judge.

The plaintiffs, Joseph S. Morgan and Ivan C. Morgan, comprise a copartnership, and are engaged in the canning business with their principal place of business at Austin, Ind. The partnership name under which they operate is the "Morgan Packing Company." They, however, have several canning factories, all within Indiana, aside from the one at Austin, each being operated under a separate and distinct trade-name. The factory at Columbus is styled the Columbus Packing Company; the one at Edinburg, the Edinburg Canning Company; the one at Brownstown, the Brownstown Canning Company; and the one at Scottsburg, the Scottsburg Canning Company.

144

While plaintiffs can a variety of food products, yet one that is canned in large quantities and sold extensively throughout the United States is canned peas, prepared wholly from the matured pea; that is, ripened and matured upon the vine. Such peas are purchased by plaintiffs in large quantities from the growers, mostly from Washington, Idaho, and other Western States. They purchase annually approximately twenty-five carloads of peas, and have them shipped directly to their various factories in Indiana. Upon receipt of these peas at their respective factories, they are carefully inspected, and the whole, sound ones are hand picked for the purpose of processing and canning. Being matured upon the vine, they are naturally hard and dry when received by the plaintiffs. By a process of soaking and heating in water at a certain temperature, by the application of steam, and sometimes by the use of ovens, they are rendered tender and palatable. The only ingredients added are sugar and salt. No coloring or flavoring is added, but by the preparation process they are restored to their natural color and form. After being thus prepared, they, together with the liquor formed thereon, are placed in hermetically sealed cans. The cans and packages containing this product all bear labels upon which is inscribed in plain language and in a conspicuous place that such product is prepared from dry peas.

While plaintiffs have been continuously engaged in the canning of food products for human consumption for more than a quarter of a century, they did not begin canning and selling dry peas until within the last four years. To illustrate the growth and extent of their business in this particular product, they sold approximately twenty-five thousand cases of twenty-four cans each in the year 1929, while in the year 1932 their sales exceeded two hundred thousand cases of an approximate value of $250,000. With the exception of approximately 5 per cent. of the output of this product, all is transported in interstate commerce.

During the year 1931, certain regulations were promulgated by the Department of Agriculture concerning canned peaches, canned pears, and canned peas. However, no attempt was made to enforce these regulations in so far as plaintiffs are concerned. Revised regulations were promulgated by the Department in the month of May, 1932, in explanation of which it was stated: "It is the opinion of the Department that canned soaked dry peas belong to the class 'canned peas.' Being mature, they are thus substandard and must bear the substandard legend." The substandard legend to which reference is made was "BELOW U. S. STANDARD, LOW QUALITY, BUT NOT ILLEGAL, SOAKED DRY PEAS." The regulations provide that this legend must be placed upon the label of all canned food of substandard quality. Dry peas prepared and canned by the plaintiffs fall within the substandard class, according to the regulations of the Department, and must contain such legend in accordance therewith. The plaintiffs have refused to comply with such regulations.

The Department has instructed its inspectors to locate all of plaintiffs' interstate shipments of such product for the purpose of instituting libel proceedings against the same because of plaintiffs' refusal to comply with the regulations pertaining to the labeling thereof. In fact, a great number of such shipments have been located and seized. Many libel proceedings are now pending, but none, however, within the state of Indiana.

Pursuant to Equity Rule 70½ (28 USCA § 723), findings of fact and conclusions of law are separately filed in this action.

The bill of complaint seeks to enjoin the United States attorney from the enforcement of the above regulations against plaintiffs and their canned food products, consisting of canned peas prepared from dry matured peas. The bill, as to Arthur M. Hyde, as Secretary of Agriculture of the United States, was dismissed upon his motion; he claiming the privilege of venue.

It is the contention of the plaintiffs that the regulations in question are invalid: First, because the provisions of such regulations are unreasonable, arbitrary, and unauthorized under the provisions of the McNary-Mapes Amendment (21 USCA § 10) pursuant to which the same were promulgated; also that the law, as amended, and applied, is invalid because it violates the Fifth Amendment of the Constitution of the United States, in that it takes plaintiffs' property without due process and without just compensation. Second, plaintiffs contend that the Food and Drug Act, as amended, is itself unconstitutional. They contend that such law violates not only the Fifth Amendment of the Constitution of the United States, but that it violates the Sixth Amendment of such Constitution, in that no standard of guilt or liability to seizure is set up in the amendment that is ascertainable from the amendment itself, but that guilt or liability to seizure is made dependable upon "reasonable" standards which may be established by the Secretary of Agriculture.

In the consideration of this case, if the court should arrive at the conclusion that the regulations in question are unreasonable and inconsistent with the act itself, it will then not be necessary to consider the constitutionality of such act. In order that such regulations may be valid, they must be reasonable and consistent with the law under which they are promulgated. International Ry. Co. v. Davidson, 257 U. S. 506, 42 S. Ct. 179, 66 L. Ed. 341; Waite v. Macy, 246 U. S. 606, 38 S. Ct. 395, 62 L. Ed. 892.

The Food and Drug Act provides for the branding or labeling of food products, and defines the instances in which food shall be deemed misbranded. Title 21, § 10, USCA. Prior to the amendment of this act in 1930, no authority was delegated to the Secretary of Agriculture to promulgate regulations for the standards of canned food products. Authority is given by such amendment to formulate such regulations. However, such regulations must be reasonable and consistent with the law which authorizes them. The first question, therefore, to be determined is whether or not the regulations which require plaintiffs to place upon the label attached to each can which is filled with processed dry peas, the legend, "BELOW U. S. STANDARD, LOW QUALITY, BUT NOT ILLEGAL, SOAKED DRY PEAS," are unreasonable and inconsistent with the law. If such regulations are unreasonable and inconsistent with the law, they are illegal, and cannot be enforced.

It is conceded by the defendant that mature dry peas, as processed by the plaintiffs, constitute a wholesome, pure food. There is no contention that such peas are not properly prepared and canned by plaintiffs. The contention of the defendant is, however, that peas thus prepared are substandard and must be labeled as such. It is clear that the purpose of the Food and Drug Act is to guard against adulterated and misbranded food products. It is also clear that it was the intention of Congress to protect the purchasing public from being imposed upon, and to inform it of the quality of goods being purchased. In construing this law, the Supreme Court of the United States said, in the case of United States v. Antikamnia Chemical Co., 231 U. S. 654, 34 S. Ct. 222, 225, 58 L. Ed. 419: "The purpose of the act is to secure the purity of food and drugs, and to inform purchasers of what they are buying." Thus it is the purpose of that part of the amended act which prohibits misbranding "to inform purchasers of what they are buying"; there being no contention that such food is impure. The question, therefore, naturally arises as to whether or not a purchaser can be misled in the purchase of "canned peas" if the label contains the statement that the contents are prepared from dry peas, as inscribed upon the label of the product sold by plaintiffs. It is inconceivable that a purchaser could be misled when the label contains such clear language.

The authority given the Secretary of Agriculture, under the law (21 USCA § 10), is "to determine, establish, and promulgate, from time to time, a reasonable standard of quality, condition, and/or fill of container for each class of canned food as will, in his judgment, promote honesty and fair dealing in the interest of the consumer." It is again demonstrated that the intention is to protect the consumer. The regulations in question limit the standard canned peas to those which are canned in their tender, immature state. Such a standard is not a reasonable one for the class of canned peas prepared from dry peas, such as plaintiffs' product.

It is apparent that the insertion of the legend required by the regulations upon the label of dry canned peas will do an irreparable injury to plaintiffs in the sale of such product, for which they have no adequate remedy at law. It will immediately arouse the suspicion of the consumer whose welfare the law is intended to protect. The rapid increase in the amount of dry peas placed upon the market by plaintiffs within the past few years is ample proof of the demand for that particular product by the consumer. To require plaintiffs to comply with such regulations will not only seriously damage their business, but will deprive the consumer of the product which he desires, and to which he is entitled.

The regulations in question, requiring such labeling of plaintiffs' food products, are unreasonable and inconsistent with the law under which they were promulgated, and are therefore invalid. International Ry. Co. v. Davidson, supra.

The defendant has asserted that he intends to enforce the regulations against these plaintiffs, and it is apparent that the enforcement thereof will do irreparable damage to them. They have no adequate remedy at law, and are entitled to an injunction permanently enjoining the defendant from the enforcement of such regulations. Waite v. Macy, supra; International Ry. Co. v. Davidson, supra; American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 S. Ct. 33, 47 L. Ed. 90; Philadelphia Co. v. Stimson,

Secy. War, 223 U. S. 605, 32 S. Ct. 340, 56 L. Ed. 570; Work, Secy. Interior, v. Louisiana, 269 U. S. 250, 46 S. Ct. 92, 70 L. Ed. 258.

In view of the conclusions reached by the court, it is not necessary to determine the question of whether or not the Food and Drug Act, as amended, is constitutional.

A decree will be prepared accordingly.