**UNITED STATES v. 5 ONE–PINT BOTTLES AND 23 ONE–GALLON BOTTLES, MORE OR LESS, OF ELIXIR TERPIN HYDRATE AND CODEINE.**

**SAME v. 14 ONE–GALLON BOTTLES AND 4 ONE–PINT BOTTLES, MORE OR LESS, OF ELIXIR TERPIN HYDRATE AND CODEINE.**

District Court, S. D. New York.
Nov. 8, 1934.

Martin Conboy, U. S. Atty., of New York City (Clarence W. Roberts, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Breed, Abbott & Morgan, of New York City (William L. Hanaway, of New York City, of counsel), for claimant.

PATTERSON, District Judge.

The Food and Drugs Act provides that any food or drug adulterated or misbranded as defined in the act and shipped in interstate commerce shall be liable to seizure and forfeiture by proceedings analogous to proceedings in admiralty. By the act, a drug is to be deemed adulterated if it is sold under a name recognized in the United States Pharmacopoeia or National Formulary and if it differs from the standard of strength, quality, or purity therein laid down; so, also, if its strength or purity falls below the standard under which it is sold. Section 7 (21 USCA § 8). A drug is to be deemed misbranded if the label on it is false and misleading; and in the case of a drug containing morphine, opium, or other specified substances or any derivative of them, it shall be deemed misbranded if the package fails to state the quantity or proportion of such substance or derivative. Section 8 (21 USCA §§ 9 and 10). There are other sorts of misbranding defined in the act, of no immediate importance.

The United States seized on two occasions a number of bottles of a liquid drug owned by one Massengill and labeled "Elixir Terpin Hydrate and Codeine (Special). Alcohol 30%. Each fluid ounce represents: Codeine Sulphate 1 gr., Terpin Hydrate 8 Grs., Glycerin q. s." Two libels for forfeiture were filed, one for each seizure. The

charge against the articles was that they were adulterated and also misbranded. Massengill appeared as claimant in each suit. The suits were tried together, and a jury waived.

■ 1. In the National Formulary there is a product listed as "Elixir of Terpin Hydrate and Codeine." The ingredients and quantities specified for it differ materially from the ingredients and quantites set forth on the labels of the bottles seized and also from the actual contents of the bottles. The first question presented is whether the drug was adulterated because sold under a name recognized in the National Formulary but not in fact conforming to the standard required by it. The claimant's contention is that the word "special," in the name on the label, "Elixir Terpin Hydrate and Codeine (Special)," is an indication that the product is not the elixir of terpin hydrate and codeine defined in the Formulary, and certain expert testimony in support of this contention was offered. But the question is not what the chemist or the druggist may understand by the addition of the word "special" to the title. The Food and Drugs Act was passed as a protection to the uninformed, that they might be assured that an article purchased was what it purported to be. United States v. Lexington Mill & Elevator Co., 232 U. S. 399, 409, 34 S. Ct. 337, 58 L. Ed. 658, L. R. A. 1915B, 774; United States v. Forty Barrels and Twenty Kegs of Coca Cola, 241 U. S. 265, 276, 36 S. Ct. 573, 60 L. Ed. 995. Certainly the average consumer would not be put on guard that a compound called "Elixir Terpin Hydrate and Codeine (Special)" was not the elixir of terpin hydrate and codeine listed in the Formulary. The word "special" might well signify to him merely that the ingredients were especially pure or that the product was manufactured with special care. If a manufacturer wishes to use a National Formulary name for a nonconforming product, it is his duty to give the public unmistakable notice that in its composition there has been a departure from the formula given in the Formulary.

■ The Regulations for Enforcement of the Food and Drugs Act, adopted by the Department of Agriculture, have an appropriate provision. Regulation 7 (b) provides: "A drug sold under a name, or a synonym, recognized in the United States Pharmacopoeia or the National Formulary which does not conform to the standard of strength, quality or purity for the article as determined by the test laid down therein shall be labelled with a statement to the effect that the drug is not a United States Pharmacopoeia or National Formulary article * * *."

This regulation is interpretive and explanatory of the statute, not an attempted addition, and there is no doubt of its validity. See United States v. Antikamnia Chemical Co., 231 U. S. 654, 34 S. Ct. 222, 58 L. Ed. 419, Ann. Cas. 1915A, 49. The mere word "special" is not a statement that the product bearing a Formulary name is not a Formulary article. I am of opinion that the drug was adulterated, in that it was sold by a name recognized in the National Formulary but varying from the standards there laid down.

■ 2. The second question is whether the drug was misbranded for not stating on the container that codeine sulphate is a derivative of opium or morphine. That codeine is a derivative of opium or morphine is undisputed. The presence of codeine sulphate was shown by the label, but it was not stated that codeine sulphate is a derivative of opium or morphine. The act, section 8 (21 USCA §§ 9, 10), declares that a product containing morphine or opium or any derivative must bear a statement of the quantity or proportion of the substance or derivative. In the Antikamnia Case, supra, the point was squarely raised whether it was a sufficient compliance merely to name the derivative or whether the manufacturer was required to go further and to state of what substance the derivative was. The court construed the statute as putting on the manufacturer the double duty. In the case of a drug containing acetphenetidin, a derivative of acetanilid, he was called upon to state on the package that the article contained acetphenetidin and that this was a derivative of acetanilid. The rule is applicable here. The packages under seizure did not bear any notice that codeine is a derivative of opium or morphine. They were therefore misbranded.

■ 3. The final question is whether there was adulteration or misbranding on the score that the contents of the bottles did not correspond with the declarations on the labels. The labels stated that each ounce contained one grain of codeine sulphate and eight grains of terpin hydrate. There was testimony by government chemists that on analyses there was more terpin hydrate than the quantity declared and less codeine sulphate. On the other hand, there was tes-

timony that when compounded the products had precisely the quantities specified on the label, and there was testimony that the test for terpin hydrate is not a satisfactory one. The variations found by the government chemists, taken as a whole, are not wide, and I am not prepared to say that they are be-yond the zone of experimental error and tolerance in manufacture. The burden of proof is on the United States, and the proof does not establish adulteration or misbranding by reason of discrepancy between the quantities set forth on the labels and the actual contents of the bottles.

There will be a decree of forfeiture for adulteration and misbranding. Findings and conclusions in conformity with this opinion may be submitted.