CERTIFIED COLOR INDUSTRY COM-
MITTEE, Allied Chemical Corporation,
Bates Chemical Company, Inc., Dye-
stuffs and Chemicals, Inc., H. Kohn-
stamm & Company, Inc., Wm. J. Stange
Company, Sterwin Chemicals, Inc. and
Warner-Jenkinson Manufacturing Com-
pany, Petitioners,

v.

SECRETARY OF HEALTH, EDUCA-
TION, AND WELFARE, Arthur
S. Flemming, Respondent.

ABBOTT LABORATORIES, Petitioner,

v.

Arthur S. FLEMMING, Secretary of
Health, Education, and Welfare,
Respondent.

Nos. 350, 351, Dockets 26094, 26162.

United States Court of Appeals
Second Circuit.

Argued June 15, 1960.

Decided Oct. 26, 1960.

Cravath, Swaine & Moore, New York City (Albert R. Connelly and Thomas D. Barr, New York City, of counsel), for petitioners Certified Color Industry Committee, and others.

Paul Gerden, North Chicago, Ill., Adrien L. Ringuette, Chicago, Ill., H. Thomas Austern and David L. Shapiro, Washington, D. C., (Covington & Burling, Washington, D. C., of counsel), for petitioner Abbott Laboratories.

Malcolm R. Wilkey, Asst. Atty. Gen., Robert S. Erdahl, Harold P. Shapiro, Attys. Dept. of Justice; William W. Goodrich, Asst. Gen. Counsel, Washington, D. C., William R. Durland, Atty., U. S. Dept. of Health, Education & Welfare, Washington, D. C., for respondent.

Before WATERMAN, MOORE and HAMLIN,* Circuit Judges.

HAMLIN, Circuit Judge.

Petitions for review of two orders of the Secretary of Health, Education and Welfare, respondent, have been filed pursuant to § 701(f) [21 U.S.C.A. § 371 (f)] of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 301 et seq. (the Act). The challenged orders revoke certificates sanctioning the use of batches of seven coal-tar colors [1] in food, drugs and cosmetics. The corporate petitioners [2] manufacture and sell coal-tar colors or products containing coal-tar colors, and each makes or uses one or more of the colors in question.

The Act [3] provides that "The Secretary shall promulgate regulations providing for the listing of coal-tar colors which are harmless and suitable for use in [food, drugs (for the purposes of coloring only) and cosmetics] and for the certification of batches of such colors * * * " [4] Use of a color from a batch not certified in accordance with these regulations renders the food, drug or cosmetic contain-

---

*Of the Ninth Circuit, sitting by designation.

1. The colors are FD&C Orange No. 1, FD&C Orange No. 2, FD&C Red No. 32, FD&C Yellow No. 1, FD&C Yellow No. 3, FD&C Yellow No. 4 and FD&C Red No. 1.

2. The petitioners in 26094 are the Certified Color Industry Committee and a number of corporations. The Committee is an informal, unincorporated association of the corporate petitioners. The corporate petitioners are coal-tar color producers and distributors who, in the aggregate, produce approximately 90% of the coal-tar colors produced in the United States for use in food, drugs and cosmetics.

Abbott Laboratories, the petitioner in 26162, is a manufacturer of pharmaceutical preparations and, in the course

of such manufacture, uses various coal-tar colors. The petition of Abbott Laboratories was originally filed in the Court of Appeals for the Seventh Circuit and transferred to this Court pursuant to the provisions of 28 U.S.C. § 2112.

3. The Act was amended by the Color Additive Amendments of 1960, approved July 12, 1960. Public Law 86–618, 74 Stat. 397. The amendatory act effects changes in a number of the sections relating to listing and certification of colors, and related matters. It has not been suggested that the amendatory act, either of its own force or because of administrative action authorized and taken pursuant thereto, has any effect on the case.

4. Sections 406(b), 504, 604, 21 U.S.C.A. §§ 346(b), 354, 364.

ing the color adulterated.[5] Adulteration of food, drugs or cosmetics in interstate commerce is prohibited, as is delivery or receipt of such adulterated articles.[6] Violators are subject to injunction and criminal prosecution and the articles themselves are subject to seizure.[7]

■ The only colors which may be listed and the only batches which may be certified are those which are "harmless and suitable for use." In determining whether a color is "harmless and suitable for use," inquiry is to be directed to the toxicity of the color itself, rather than of the food, drug or cosmetic in which it may be used. The Secretary is not required "first to attempt to analyze the uses being made of the colors in the market place * * *" Flemming v. Florida Citrus Exchange, 1958, 358 U.S. 153, 164, 79 S.Ct. 160, 167, 3 L.Ed.2d 188. If a color is harmless, it may be listed and certified for use; if not, it may not be used at all.

The colors in question have either been delisted or their specifications amended.[8] Petitioners do not question the power of respondent to do this or the propriety of his action, but they do challenge his authority to revoke the certificates on batches certified prior to effective date of the delisting, and suggest, alternatively, that even if such authority is found, its exercise would operate to deprive them of property without due process of law.

The first of the two orders under attack (the October order) was published October 21, 1959. 24 F.R. 8492.[9] This order added a new regulation,[10] provid-

---

5. Sections 402(c), 501(a) (4), 601(e), 21 U.S.C.A. §§ 342(c), 351(a) (4), 361 (e).

6. Section 301, 21 U.S.C.A. § 331.

7. Sections 302–304, 21 U.S.C.A. §§ 332–334.

8. The specifications for FD&C Red No. 1 were revised. 24 F.R. 5707 (July 16, 1959); 24 F.R. 7693 (September 24, 1959). There was no petition for judicial review. The orders delisting the other colors on the ground they were not "harmless and suitable for use" were affirmed. Fleming v. Florida Citrus Exchange, 358 U.S. 153, 79 S.Ct. 160, 3 L. Ed.2d 188 (FD&C Red No. 32); Certified Color Industry Committee v. Secretary of Health, Education and Welfare, 2 Cir., 1956, 236 F.2d 866 (FD&C Orange No. 1, FD&C Orange No. 2, and FD&C Red No. 32); Dyestuffs & Chemicals, Inc. v. Flemming, 8 Cir., 1959, 271 F.2d 281, certiorari denied 362 U.S. 911, 80 S.Ct. 681, 4 L.Ed.2d 619 (FD&C Yellow No. 1, FD&C Yellow No. 3, and FD&C Yellow No. 4).

9. This order followed a notice of proposed rule making published April 15, 1959. 24 F.R. 2875.

10. The regulation, as modified, provides:
§ 9.7 Limitation of certificates.
* * * * *

(i) (1) When the listing of the specifications for a coal-tar color are revoked or amended, the final order effecting the revocation or amendment shall specify, in addition to its own effective date, a date on which all certificates for existing batches and portions of batches of such a color theretofore issued under such revoked or amended regulations shall cease to be effective; and any such lots of the color shall be regarded as uncertified after the date specified unless a new certificate can be and is obtained in conformance with the new regulations. When a certificate thus ceases to be effective for a coal-tar color, any certificates previously issued for a color mixture containing that color shall cease to be effective on the same date. Use of such color or color mixture after such specified date without the new certificate in preparing food, drugs, or cosmetics will result in such food, drugs, or cosmetics being adulterated. When a certified color has been used in food (including prepared dyes and mixtures intended for use solely in coloring shell eggs), drugs, or cosmetics, and the status of the color is thereafter changed by amendment or revocation of its listing or specification regulations, such food (including prepared dyes and mixtures intended for use solely in coloring shell eggs), drugs, and cosmetics will not be regarded as adulterated by reason of the use of such color, unless the hazard to health is such that existing stocks of the colored foods (including prepared dyes and mixtures intended for use solely in coloring shell eggs), drugs, or cosmetics cannot be safely used, in which cases findings to that effect will be made and regulations appropriate for such special cases will be issued.

ing generally that each final order thereafter issued amending or revoking the listing or specifications for a coal-tar color would specify a date on which certificates for existing batches or portions of batches would cease to be effective. It provided that when a certificate for a color ceased to be effective, certificates issued for color mixtures containing the dye should also cease to be effective, and that use of the color or color mixture thereafter without obtaining a new certificate would result in the colored food, drug, or cosmetic being adulterated. However, a change in the status of a color after it had been used in food, drugs, or cosmetics would not be regarded as an adulteration, unless the hazard to health was such that existing stocks of the colored articles could not be safely used, in which case findings to that effect would be made and regulations appropriate for such special cases issued.

The order further specified that existing certificates for batches of six of the seven colors theretofore delisted (or whose listing was amended) would expire on January 1, 1960, and that existing certificates for batches of FD&C Red No. 1 (Red 1) would expire on January 15, 1960.

The second order in question (the January order) was published on January 8, 1960. 25 F.R. 143. In the interim a number of interested parties filed objections to the first order and some requested a public hearing. The second order modified the first order in one minor respect, denied the requested hearing,[11] and postponed the effective date of the first order until April 6, 1960, to allow time for filing petitions for judicial review. The instant petitions were thereafter timely filed.

When it is determined that a listed (supposedly harmless) color is not harmless, and its listing or specifications are revoked or amended, *future* batches may not, of course, be certified under the revoked listing or specifications. Petitioners assert, however, that respondent lacks power to withdraw his certification of batches—batches now known not to be harmless—which were certified *prior* to the effective date of the revocation or amendment; that power to certify harmless batches does not include power to decertify those which are not harmless. The claimed anomaly is said to give petitioners, and presumably all persons who possess colors which were certified under the now revoked and amended regulations in the mistaken belief that they were harmless, a right to continue their use in food, drugs and cosmetics.

Petitioners concede the validity of regulations providing that certificates shall not be effective in certain cases, as where a batch changes in physical condition. 21 C.F.R. § 9.7. Such a limitation on certificates is said to be proper because where a batch changes in physical condition it no longer conforms to regulations in effect at the time of certification. This justification, of course, is inapplicable to the limitation asserted in the orders under review—a limitation based not upon non-conformity with past regulations, but upon non-conformity with present regulations. Acceptance of what we understand to be the suggested construction—that a batch may be decertified only if it fails to conform to regulations in effect at the time it was certified—would mean that a certificate given in the *correct* belief that the batch is harmless may in certain cases be withdrawn, but a certificate which is inaccurate from

11. The following reasons were given for denial of a public hearing:

These objections raise a legal issue that could not be settled by a public hearing. It is the Department's construction of the statute that it has the authority to withdraw its certificate of harmlessness on any batch of coal-tar color that it has certified when facts become known which establish that the color is not harmless

and the certificate is no longer factual. The objectors challenge this interpretation. It can only be resolved by the courts. Since the issue raised by the objections is not one on which a hearing would contribute to a solution, the requests for hearing are denied, and the objectors may take the issue promptly to the courts where there is authority to resolve it.

the beginning and given in the *mistaken* belief that the batch is harmless may not be withdrawn. Such a result would make little sense. The purpose of the Act is to prevent other than harmless colors from being used in food, drugs and cosmetics. If this purpose is to be effectuated, withdrawal of a certificate in one case is obviously quite as important as withdrawal in the other.

■ Respondent has power to delist colors which are found not to be harmless, but delisting operates only to preclude certification of batches in the future. Without the collateral power to withdraw certificates issued prior to the effective date of delisting he would be partially disabled from preventing other than harmless colors from reaching the consumer in food, drugs or cosmetics.[12] A certificate must be taken to mean more than that the batch conforms to regulations in effect at the time it was certified; it must also be taken as a representation that the batch is harmless, for harmless batches are the only ones respondent has power to certify. When it is discovered this representation is inaccurate the mistake may be corrected. Just as the respondent has power to certify only harmless batches, we think he .has the concomitant power to decertify those which are found not to be harmless. Cf. United States v. Antikamnia Chemical Company, 1914, 231 U.S. 654, 34 S.Ct. 222, 58 L.Ed. 419.

What has been said we think disposes of petitioners' argument that, instead of withdrawing his certification, respondent is required to proceed under the adulteration provisions[13] and show the colored product may be "injurious to health." The collateral power to withdraw certification, if it exists at all, as we think it does, must be referable to the same standard that governs listing and delisting of colors and certification of particular batches; i. e., harmlessness. Both delisting of colors and decertification of batches are calculated to reach the same evil, and as respondent is not required "first to attempt to analyze the uses being made of the colors in the market place" in the one case, Flemming v. Florida Citrus Exchange, supra, 358 U.S. 164, 79 S.Ct. 167, 3 L.Ed.2d 188, neither is he required to do so in the other.

Petitioners advance the argument that revocation or withdrawal of the certificates would deprive them of property without due process of law in violation of the Fifth Amendment. That the orders may be retroactive is no obstacle. Retroactive administrative action has been upheld in areas no less imperative than the public health. N. L. R. B. v. National Container Corp., 2 Cir., 1954, 211 F.2d 525, 534.

> "* * * retroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law." Securities & Exchange Commission v. Chenery Corporation, 332 U.S. 194, 203, 67 S.Ct. 1575, 1581, 1760, 91 L.Ed. 1995.

And see Speert v. Morgenthau, 1940, 73 App.D.C. 70, 116 F.2d 301.

The argument is made that the batches present no hazard to public health and the need for regulation is absent; that

---

12. It is true that he has not sought to completely prevent other than harmless colors from reaching consumers, as the challenged regulation, footnote 10, *supra*, has no effect on food, drugs, or cosmetics in which a certified color may have been used prior to the date the certificate ceases to be effective (unless the hazard to health is such that existing stocks of such articles cannot be safely used). But whether respondent has any power or obligation to declare such existing stocks adulterated is not involved. The only question here is whether he has the power to withdraw his certification of batches or portions of batches of colors whose listing or specifications have been revoked or amended.

13. E.g., § 402(a) (1), 21 U.S.C.A. § 342 (a) (1).

private interests may not be adversely affected unless legitimate public interest is served. But the statutory standard is harmlessness. Six of the seven colors involved have been delisted because they are not harmless.[14] As to them, the determination that the statute requires has been made. That is all that is required.

"[I]t certainly was competent for Congress, in the light of what were recognized problems to health in the use of such added colors, to adopt a rule of caution in treating this recognized and definable problem area. This rule of caution is here one which relieves the Secretary from the burden of showing in each case that a food containing them raises a possibility of injury to health, and requires that the color stuffs, whose positive values are only visual and which are not naturally found in foods, not be added unless they could pass a higher standard." Flemming v. Florida Citrus Exchange, 1958, 358 U.S. 153, 162, 79 S.Ct. 160, 166, 3 L.Ed.2d 188.

■ Red 1[15] presents a special case. We have stated above that respondent's power to decertify extends to batches which are found not to be harmless. If the Act's purpose is to be realized, this power is plainly necessary. There may be other situations where decertification may be proper. It would seem proper in any case where it would bear a reasonable relation to realization of permissible ends. But we do not think the Act gives respondent the power to withdraw certification in every case where the listing or specifications for a color are revoked or amended, no matter how unrelated to any question of harmlessness the revocation or amendment of listing or specifications may be.

The Certified Color Industry Committee (the Committee) contends that no facts have become known which even indicate that Red 1 is not harmless, and refers us to the objections to the October order it filed with respondent. The objections state that:

"3. The cancellation of certificates of F, D and C Red No. 1 following amendment of that color's specifications is completely unnecessary. The specifications of F, D and C Red No. 1 were amended primarily to establish a convenient chemical means of administering the color. The amendments were thus not a result of toxicological conclusions about the color in its varying specifications. Accordingly, under the statutory 'harmless' tests governing coal-tar colors, no basis exists for the decertification of outstanding batches of the color simply because such batches may have varying specifications."

Respondent, to the contrary, says that the old specifications permitted unlimited use of a "toxic amine" known as mesidine, and points out that the new specifications do limit the use in Red 1 of 1-Amino-2,4,6 trimethylbenzine and aminomethylbenzines.

■ The Committee requested a hearing on its objections to the October order. The request was denied on the ground the objections raised a "legal issue that could not be settled by a public hearing," and that under respondent's construction of the statute he had authority to withdraw his certificate "when facts become known which establish that the color is not harmless * * *"[16]

Respondent has not made a finding, however, that Red 1 is not harmless. Whether it is or not calls for a determination obviously beyond our competence, if not our power. We find nothing in the record relating to amendment to the specifications for Red 1 which would justify withdrawal of certification of batches certified prior thereto. On May

14. Footnote 8, *supra.*

15. On April 4, 1960, pursuant to stipulation between the parties, this Court ordered the effective date of the January order, insofar as it affected batches of Red 1, stayed until 30 days after final determination of this proceeding.

16. See footnote 11, *supra.*

628

27, 1959, a notice was published stating that the Committee had proposed an amendment to the specifications for the certification of Red 1. 24 F.R. 4264. The notice stated that:

"The present specifications describing the color, by specifying the boiling range of the mixture of amines used in preparation of the dye, are so broad that they cannot be regarded as satisfactorily specifying the composition of the material entered for certification. It is therefore proposed to adopt specifications that will result in the production and certification of material of uniform composition."

On July 16, 1959, the order amending the regulations pursuant to the proposal was adopted. 24 F.R. 5707.

The only things before us relating to the harmless or non-harmless character of Red 1 are the conflicting claims of the parties and the unilluminating notice from the Federal Register, quoted above. There is nothing properly before us which indicates that Red 1 is not harmless, or that the issue was ever raised. It is true that no one challenged the proposal to change the specifications on Red 1, but it is not suggested that the proposal or order would indicate to anyone that the color's harmlessness was being or had been challenged.

The objections filed by the Committee, quoted above, were certainly sufficient to raise the issue of the harmless or non-harmless character of Red 1, which is a question of fact. As no underlying factual determination of a sort sufficient to justify withdrawal of certificates had been made, the objections raised more than a "legal issue."

If respondent wishes to withdraw certification of batches on the ground a color is not harmless, the only ground asserted here, we think the Act requires him to make explicit his determination that the color is not harmless, as he did with respect to the other six colors mentioned in his October order. 19 F.R. 9352 (December 30, 1954), 20 F.R. 8492 (November 16, 1955); 22 F.R. 3173 (May 4, 1957).

The only issue with respect to Red 1 is whether respondent may withdraw certificates on the basis of the present record. We hold that he may not. This is not to say, however, that he would be precluded from doing so upon establishing a factual basis sufficient to justify withdrawal.

The orders of the respondent are set aside insofar as they revoke or withdraw outstanding certificates on batches of Red 1. Otherwise they are affirmed.