859

BOARD OF TRADE OF KANSAS CITY,
MO., et al. v. MILLIGAN, U. S. Atty.,
et al.

No. 2857.

District Court, W. D. Missouri, W. D.

Sept. 11, 1936.

E. R. Morrison, Delos C. Johns, W. B. Cozad, and Douglas Stripp, all of Kansas City, Mo., for plaintiffs.

H. B. Cox, Asst. to Atty. Gen., and John Dickinson and Wendell Berge, both of Washington, D. C., for defendants.

REEVES, District Judge.

This is a suit brought by plaintiffs to enjoin the enforcement of the Commodity Exchange Act, 49 Stat. 1491, 7 U.S.C.A. § 1 et seq. The act so designated was approved June 15, 1936. Such enactment is largely amendatory of the Grain Futures Act passed by the Congress, and approved in 1922, 42 Stat. 998, 7 U.S.C.A. § 1 et seq. The amended act known as the Commodity Exchange Act broadens the scope of the original act so as to include with grain other commodities such as cotton, mill feed, butter, eggs, and Irish potatoes. Additional regulations are superimposed upon persons and corporations engaged in contract trading, etc.

The plaintiffs, according to the averments of their bill, are engaged in buying and selling on their own account and for the account of others grain in cars in Kansas City for immediate delivery. Such are generally referred to as cash trades. They also handle and sell for cash grain consigned from producers and grain dealers. It is again alleged that such grain is sold for immediate delivery. These are called cash transactions on commission. Also that plaintiffs buy grain on mail or telegraph orders to producers or grain dealers. Such transactions are commonly known as sales for deferred shipment or "contracts to arrive." They also do business on warehouse receipts deliverable on future contracts. Also they make contracts either on their own account or on commission for the purchase and sale of grain for future delivery, and, in like manner, make what is technically known as "hedging contracts," either on their own account or for others on commission. They also engage in the purchase and sale of contracts commonly known as bids and offers. Comprehensively, they carry on such business as is usually transacted by members of boards of trade.

The various activities of the plaintiffs have been defined and covered by the original Grain Futures Act, or by the present Commodity Exchange Act. By these several enactments it is sought by the Congress to bring persons engaged in such business and market agencies under the supervision, control, and regulation of the Secretary of Agriculture.

The plaintiffs challenge the constitutionality of the entire act. They assert that it is an effort on the part of the Congress to regulate commerce purely and wholly intrastate in character. This is predicated upon averments to the effect that all of such transactions are local.

It seems proper to discuss the question of the constitutionality of the act, and, if constitutional, the right of the Congress

to authorize the regulation of the business carried on by these plaintiffs.

1. The Grain Futures Act was declared to be a valid exercise of congressional power. In the case of Board of Trade of Chicago v. Olsen, 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839, practically identical questions were presented in the challenge there lodged to the constitutionality of that act. It is contended here, as was contended in the Olsen Case, that the case of Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L. Ed. 822, properly declared the Future Trading Act invalid and that by the same reasoning the court should have. held the Grain Futures Act unconstitutional, and that now the Commodity Exchange Act should in like manner be declared invalid.

In the case of Hill v. Wallace, the court held the Future Trading Act unconstitutional because, as it clearly stated, the act was designed to regulate similar business under the guise of a tax. The act was so worded that, if the market agencies submitted to certain regulatory authority, they became exempt from the application of the tax. While the court declared such a method of regulation unconstitutional, yet nevertheless it said, 259 U.S. 44, loc. cit. page 69, 42 S.Ct. 453, 458, 66 L.Ed. 822: "It follows that sales for future delivery on the Board of Trade are not in and of themselves interstate commerce. They cannot come within the regulatory power of Congress as such, *unless they are regarded by Congress, from the evidence before it, as directly interfering with interstate commerce so as to be an obstruction or a burden thereon.*"

In the Olsen Case, 262 U.S. 1, loc. cit. 32 and 33, 43 S.Ct. 470, 476, 67 L.Ed. 839, the court in referring to the case of Hill v. Wallace, specifically said: "Instead, therefore, of being an authority against the validity of the Grain Futures Act, it is an authority in its favor."

The court, in the case of Hill v. Wallace, pointed out in what way Congress could exercise authority over market agencies such as those of the plaintiffs.

The principles laid down in the Olsen Case were developed from such cases as Swift & Co. v. United States, 196 U.S. 375, loc. cit. 398, 399, 25 S.Ct. 276, 280, 49 L.Ed. 518, where the court said: "When cattle are sent for sale from a place in one state, with the expectation that they will end their transit, after purchase, in another, and when in effect they do so, with only the interruption necessary to find a purchaser at the stock yards, and when this is a typical, constantly recurring course, the current thus existing is a current of commerce among the states, *and the purchase of the cattle is a part and incident of such commerce.*"

This reasoning was made specifically applicable to grain transactions in Lemke v. Grain Co., 258 U.S. 50, loc. cit. 54, 55, 59, 42 S.Ct. 244, 246, 247, 66 L.Ed. 458. The court said in substance that, notwithstanding the local nature of the transactions, the course of dealing constituted interstate commerce, even though the immediate transaction was a local one.

The principle was also stated in United States v. Ferger, 250 U.S. 199, 39 S.Ct. 445, 63 L.Ed. 936, where the court upheld the power of the Congress to provide punishment for introducing false and fraudulent bills of lading in interstate commerce.

The very recent case of Schechter Corporation v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, quite clearly distinguishes between those cases of a local nature and usually classified as belonging to intrastate commerce, and those cases of a public nature and belonging to interstate commerce, and therefore within regulatory power of the Congress. The court uses such expressions as "current" and "flow" of interstate commerce and emphasizes how marketing of cattle and the marketing of livestock and of grain, such as in the instant case, affects interstate commerce in such way as to burden it or obstruct it and to justify the Congress in entering the field of regulation. Moreover, in the Schechter Case, 295 U.S. 495, loc. cit. 543, 55 S.Ct. 837, 849, 79 L.Ed. 1570, 97 A.L.R. 947, the court specifically said: "Hence decisions which deal with a stream of interstate commerce —where goods come to rest within a state temporarily and are later to go forward in interstate commerce—and with the regulations of transactions involved in that practical continuity of movement, are not applicable here."

The court specifically referred to the following cases as differing in principle from the Schechter Case and as not being affected by the ruling in that case: Swift & Co. v. United States, 196 U.S. 375, 387, 388, 25 S.Ct. 276, 49 L.Ed. 518; Lemke v. Farmers' Grain Co., 258 U.S. 50, 55, 42 S.

Ct. 244, 246, 66 L.Ed. 458; Stafford v. Wallace, 258 U.S. 495, 519, 42 S.Ct. 397, 403, 66 L.Ed. 735, 23 A.L.R. 229; Board of Trade of Chicago v. Olsen, 262 U.S. 1, 35, 43 S.Ct. 470, 476, 67 L.Ed. 839; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 439, 50 S.Ct. 220, 224, 74 L.Ed. 524.

 Without going into further details, it must be ruled that the act challenged by the plaintiffs is constitutional, and that the plaintiffs are not entitled to any order predicated upon the invalidity of the act.

2. The only other question is whether the regulations prescribed or provided for by the Congress are so onerous as to fall under the condemnation of the due process provision of the Fifth Amendment.

Assuming, as we must, that the Congress exercised a power within its constitutional sphere, is it using such power arbitrarily?

It is the law that when the Congress properly enters the field of its authorized activity it may not only adopt means necessary, but, in like manner, means convenient to the exercise of its power. Hoke v. United States, 227 U.S. 308, loc. cit. 323, 33 S.Ct. 281, 57 L.Ed. 523, 43 L.R.A. (N.S.) 906, Ann.Cas.1913E, 905.

In Gloucester Ferry Co. v. Pennsylvania, 114 U.S. 196, 215, 5 S.Ct. 826, 834, 29 L.Ed. 158, the court quoted from Cooley's Constitutional Limitations as follows: "It is not doubted that congress has the power to go beyond the general regulations of commerce which it is accustomed to establish, and to descend to the most minute directions if it shall be deemed advisable, and that, to whatever extent ground shall be covered by those directions, the exercise of state power is excluded. Congress may establish police regulations as well as the states, confining their operations to the subjects over which it is given control by the constitution."

In the case of Tagg Bros. v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524, the court decided an almost identical question. In that case the court was dealing with stockyards. These constituted market agencies for livestock, just as the Board of Trade and its members maintain a place for grain transactions. In the Tagg Bros. Case the court upheld regulations promulgated by the Secretary of Agriculture. Such regulations were as burdensome as those that potentially may be imposed in the enforcement of the law now under observation. See, also, Pacific Telephone & Telegraph Company v. Seattle, 291 U.S. 300, 54 S.Ct. 383, 78 L.Ed. 810.

If, and when, regulatory measures are applied which may seem too onerous to be lawful, provision is made for the protection of the members of the Board of Trade. Moreover, it will then be time to complain, and not in advance of the promulgation of such regulation.

Many other authorities were ably discussed by counsel on both sides. A number of these referred to enactments clearly unconstitutional. Time forbids further discussion of the questions presented by the parties.

In view of the above, the application for a temporary injunction will be denied.

The defendants will prepare an appropriate decree.