WEEKS, DOING BUSINESS UNDER THE NAME OF O. J. WEEKS & COMPANY, *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 109. Submitted January 2, 1918.—Decided February 4, 1918.

The Food and Drugs Act of June 30, 1906, c. 3915, § 8, 34 Stat. 768, specifies and defines at least two kinds of "misbranding"—one where the article bears a false or misleading label, and the other where it is offered for sale under the distinctive name of another article.

In either case, it is not the misbranding that is made unlawful, but the shipment or delivery for shipment from one State to another, of the misbranded article.

That this is a legitimate exertion of the power of Congress to regulate interstate commerce is settled by previous decisions.

It is also settled that the negotiation of sales of goods which are in

another State, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce.

Upon a charge of misbranding by offering for sale under the distinctive name of another article, *held,* that the trial court properly received evidence that the shipment was made to fill an order obtained by the defendant's agent by so misrepresenting the article, and properly declined to confine the jury's attention to the label borne by the article when it was shipped.

Whether the court below was correct in viewing intent as not an element in such a case and so in holding that sanction by defendant of his agent's misrepresentations was immaterial, this court need not determine, since the trial court instructed the jury that such authority must appear beyond reasonable doubt, and, as the record neither shows that defendant objected to this mode of submitting the question nor purports to contain all the evidence, the verdict of guilty must be taken as determining conclusively that he sanctioned the representations.

224 Fed. Rep. 64, affirmed.

THE case is stated in the opinion.

*Mr. Walter Jeffreys Carlin* for petitioner.

*The Solicitor General* and *Mr. Assistant Attorney General Frierson* for the United States.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was a prosecution under the Act of June 30, 1906, c. 3915, 34 Stat. 768, upon a charge of shipping an article of food in interstate commerce in circumstances making the shipment a violation of the act. The information contained two counts, both charging that the article was misbranded,—one because it bore a false and misleading label, and the other because it was offered for sale as lemon oil when in truth it was an imitation thereof containing alcohol and citral derived from lemon grass. In the District Court there was a conviction upon both counts, and the Circuit Court of Appeals reversed the conviction as

to the first count and affirmed it as to the second. 224 Fed. Rep. 64. The judgment upon the latter is all that is brought here for review.

The defendant was engaged in making and selling various articles of food used by bakers, confectioners and ice cream makers, including the article with which this prosecution is concerned. On the occasion in question he shipped from one State to another a quantity of this article labeled "Special Lemon. Lemon Terpene and Citral." The printed record, although not purporting to contain all the evidence, shows that there was testimony tending to prove the following facts, among others: The shipment was made to fill an order solicited and taken by a traveling salesman in the defendant's employ. The salesman had been supplied by the defendant with a sample bottle of the article which was labeled simply "Special Lemon." In offering the article for sale and soliciting the order the salesman exhibited the sample and represented that the article was pure lemon oil obtained by a second pressing and that this pressing produced a good, if not the best, oil. In truth the article was not lemon oil, but an imitation thereof containing alcohol and citral made from lemon grass. Some of the elements of lemon oil were present in other than the usual proportions and others were entirely wanting.

The testimony respecting the salesman's representations was admitted over the defendant's objection; and later the court denied a request on the part of the defendant that the jury be instructed that this testimony could not be considered, but only the statement appearing on the label when the article was shipped. In that connection the court told the jury that the defendant could not be held responsible criminally by reason of any representations made by the salesman unless it appeared beyond a reasonable doubt that the same were made by the defendant's authority.

The defendant, who is the petitioner here, complains of the admission and consideration of this testimony and insists that under the statute the question whether an article is misbranded turns entirely upon how it is labeled when it is shipped, regardless of any representations made by a salesman, or even the vendor, in offering it for sale.

The statute, in its second section, makes it unlawful to ship or deliver for shipment from one State to another "any article of food or drugs which is adulterated or misbranded within the meaning of this act." In its eighth section it declares:

"That the term 'misbranded,' as used herein, shall apply to all drugs, or articles of food, or articles which enter into the composition of food, the package or label of which shall bear any statement, design, or device regarding such article, or the ingredients or substances contained therein which shall be false or misleading in any particular, and to any food or drug product which is falsely branded as to the State, Territory, or country in which it is manufactured or produced.

"That for the purposes of this Act an article shall *also* be deemed to be misbranded:

"In the case of drugs:

    *       *       *       *       *       *       *       *

"In the case of food:

"First. If it be an imitation of or offered for sale under the distinctive name of another article."

This section contains other provisions relating to misbranding, but they are not material here and need not be set forth or specially noticed.

It is apparent that the statute specifies and defines at least two kinds of misbranding,—one where the article bears a false or misleading label, and the other where it is offered for sale under the distinctive name of another article. The two are quite distinct, a deceptive label being an essential element of one, but not of the other. No

doubt both involve a measure of deception, but they differ in respect of the mode in which it is practiced. Evidently each is intended to cover a field of its own, for otherwise there would be no occasion for specifying and defining both. That one article of food may be offered for sale in the distinctive name of another, and the offer accomplish its purpose, without the aid of a false or misleading label hardly needs statement.

The statute does not attempt to make either kind of misbranding unlawful in itself, but does, as before indicated, make it unlawful to ship or deliver for shipment from one State to another an article of food which is misbranded in either way. That this is a legitimate exertion of the power of Congress to regulate interstate commerce is settled by our decisions. *Hipolite Egg Co.* v. *United States,* 220 U. S. 45; *McDermott* v. *Wisconsin,* 228 U. S. 115, 128; *Seven Cases of Eckman's Alterative* v. *United States,* 239 U. S. 510, 514. It also is settled by our decisions that "the negotiation of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce." *Robbins* v. *Shelby Taxing District,* 120 U. S. 489, 497; *Crenshaw* v. *Arkansas,* 227 U. S. 389, 396.

It follows that the testimony respecting the representations of the defendant's traveling salesman was rightly admitted in evidence and submitted to the jury. It tended to prove that the order, to fill which the shipment was made, was obtained by offering the article for sale in the distinctive name of another article, and therefore that the article was misbranded within the meaning of the statute. To have confined the jury's attention to the label borne by the article when it was shipped, as was requested by the defendant, would have been to disregard the nature of the charge in the second count and the distinction between the two kinds of misbranding.

In the Circuit Court of Appeals the view was expressed

that intent was not an element of the offense charged in the second count and therefore that it was immaterial whether the representations of the salesman had the sanction of the defendant. Complaint is now made of this. But the question is not in the case, the view expressed by the Circuit Court of Appeals not being essential to an affirmance of the judgment. The District Court had expressly instructed the jury that to hold the defendant responsible criminally by reason of such representations it must appear, and appear beyond a reasonable doubt, that they were made by his authority. The record before us does not show that the defendant objected to the submission of this question to the jury in this way; neither does it purport to contain all the evidence. The verdict therefore must be taken as conclusively determining that the representations were made with the defendant's sanction.

*Judgment affirmed.*