**STRONG, COBB & CO., Inc., v. UNITED STATES.**

No. 7989.

Circuit Court of Appeals, Sixth Circuit.

May 5, 1939.

---

[4] Emphasis supplied.

[5] Longshoremen's and Harbor Workers' Compensation Act, §§ 13, 19 (44 Stat. 1432, 1435, 33 U.S.C.A. §§ 913, 919).

[6] The exceptions were called motions to dismiss.

[7] Compare Crowell v. Benson, 285 U. S. 22, 37, 52 S.Ct. 285, 76 L.Ed. 598.

Robert D. Godfrey, of Cleveland, Ohio, for appellant.

E. B. Freed, U. S. Atty., and Frank Wiedemann, Asst. U. S. Atty., both of Cleveland, Ohio, for the United States.

Before SIMONS, ALLEN, and ARANT, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a conviction under the first count of a criminal information which count charged that appellant, in violation of the Food and Drugs Act, 34 Stat. 768, unlawfully shipped from Cleveland, Ohio, to Oklahoma City, Oklahoma, to the Scotch-Tone Company one drum containing adulterated cold tablets, each of which tablets "was represented by the Strong, Cobb & Company, Inc., to said Scotch-Tone Company, in letters dated December 7 and December 13, 1932, to contain one grain of acetanilid and 0.625 grain of quinine sulphate, whereas, in truth and in fact, each of said tablets contained less than 1 grain, to wit, not more than 0.83 grain of acetanilid, and each of said tablets contained less than 0.625 grain, to wit, not more than 0.56 grain of quinine sulphate. * * *"

The statutes involved are Sections 2 and 8 of Title 21, U.S.C., 21 U.S.C.A. §§ 2, 8, the pertinent portions of which read as follows:

Section 2. "The introduction into any State * * * from any other State * * * of any article of food or drugs which is adulterated or misbranded, within the meaning of sections 1 to 15, inclusive, of this title, is prohibited; and any person who shall ship or deliver for shipment from any State * * * to any other State * * * any such articles so adulterated or misbranded within the meaning of said sections, or any person who shall sell or offer for sale in the District of Columbia or the Territories of the United States any such adulterated or misbranded foods or drugs, * * * shall be guilty of a misdemeanor * * *."

For the purposes of the act, an article is deemed to be adulterated:

Section 8. "In case of drugs: * * *

"Second. If its strength or purity fall below the professed standard or quality under which it is sold."

Appellant pleaded not guilty and waived jury trial. Appellant's motions to dismiss made at the close of the Government's evidence and renewed at the close of all the evidence were sustained as to Count 2 of the information (which charged misbranding under the statute and is not involved in this appeal), and overruled as to Count 1 which charged adulteration.

The principal contentions are:

(1) That the shipment was not made in interstate commerce within the meaning of the Food and Drugs Act.

(2) That appellant made no profession as to the standard and strength of the cold tablets.

(3) That the record does not present substantial evidence of the guilt of appellant.

■ Appellant's first contention, that it is not shown that it made the shipment in question, is wholly without merit. The record presents the invoices and the bill of lading of the shipment, the file copies of appellant's shipping department records, and a statement by appellant's president that he presumed the shipment was delivered to the carrier. A drum bearing a

label "From Strong, Cobb & Co., Inc., Cleveland, Ohio," and containing about 17,000 cold tablets, was found on the Scotch-Tone premises in Oklahoma City, and the Scotch-Tone manager stated that the shipment had been received. The cold tablets were ordered from Oklahoma City, and unquestionably they were sent from Cleveland to Oklahoma City in interstate commerce. However, appellant maintains that under the doctrine of United States v. Knowlton Danderine Co., 4 Cir., 175 F. 1022, there was in contemplation of law no shipment in interstate commerce under the Food and Drugs Act because the tablets were shipped in bulk, to be repackaged by the Scotch-Tone Company before retail distribution. The conclusive answer to appellant's contention is that the doctrine of the Knowlton Danderine Co. case has been in effect disapproved in Hipolite Egg Co. v. United States, 220 U.S. 45, 31 S.Ct. 364, 55 L.Ed. 364. In that case the Knowlton Danderine decision was relied on as supporting the proposition that Section 10 of the Food and Drugs Act, 21 U.S.C.A. § 14, does not apply to an article of food which has not been shipped for sale, but which has been shipped solely for use as raw material in the manufacture of some other product. The court, in discussing the proposition, states that the situations covered by the statute cannot be qualified "by the purpose of the owner to be a sale," and holds that the contention of the Egg Company is untenable (220 U.S. page 55, 31 S.Ct. page 366, 55 L.Ed. 364).

■ Upon the second point, it is urged that the letters sent by appellant were not professions of strength or purity within the meaning of the act. The record shows that the Scotch-Tone Company ordered certain cold tablets to be manufactured by appellant, and that the formula proposed by appellant was agreed upon between the parties. It called for one grain of acetanilid and .625 grains of quinine sulphate. In the letter of December 13, 1932, appellant instructed the Scotch-Tone Company, "Advising you as to the label, you should declare 1 grain of Acetanilide and it probably would be well to declare the .625 grains of Quinine Sulphate."

Appellant urges that since the tablets were not in existence at the time of this letter, having been manufactured in January, 1933, no profession of standard was or could be made with reference to the purity and strength of the ingredients. In

support of this contention, it cites decisions which lay down the familiar doctrine that in general fraudulent representations must concern past or existing facts. Cf. George A. Breon & Co., Inc., v. United States, 8 Cir., 74 F.2d 4. But appellant represented after the tablets were manufactured that it was shipping the tablets ordered and manufactured according to the formula, and this representation related back to and incorporated the formula by reference.

The case is analogous to Weeks v. United States, 245 U.S. 618, 620, 38 S.Ct. 219, 220, 62 L.Ed. 513. There the defendant contended that under the statute the question whether an article is misbranded turns entirely upon how it is labeled when it is shipped, regardless of any representations made by the salesman or even the vendor in offering it for sale. But the court rejected this contention and held that the statute covers both the case of misbranding where the article bears a false or misleading label, and the case of misbranding where the article "is offered for sale under the distinctive name of another article." There the order, to fill which the shipment was made, was obtained by offering the article for sale in the distinctive name of another article. Here the order, to fill which the shipment was made, was obtained by offering the cold tablets for sale under the representation that each tablet contained one grain of acetanilid and .625 grain quinine sulphate. The representations in each case were prior to the shipment, and each constitutes a violation of the statute.

■ The identity of the contents of the drum is satisfactorily shown. While the drum was opened when samples were taken therefrom and the samples were extracted some six months after the drum was received in Oklahoma City, the cover was on the drum at the time and there was no evidence whatever that other parties than the employees of the Scotch-Tone Company had access thereto, or that other tablets were mixed with these cold tablets. The manager of the Scotch-Tone Company says that they had no other cold tablets on hand at that time, and that he did not believe that they had any other chocolate-coated tablets in drums of that size. The fact that the four Government chemists found as to acetanilid and quinine sulphate that these tablets were almost identical in their content and that they contained the ingredients demanded by the formula is substantial evi-

dence that the cold tablets analyzed were from the drum shipped by appellant.

The analyses of the Government chemists are attacked as incorrect. It is said that since the cold tablets contained a number of other ingredients, such as cascara sagrada, podophyllin, resin jalap, powdered camphor, oleoresin capsicum, and powdered starch, a strong interference necessarily arose which would greatly affect the accuracy of the analyses. However, three of the Government chemists, qualified experts, used methods of analysis which were not identical, and arrived at practically the same result. This is substantial evidence of the correctness of the analyses. The Government chemists all stated that the effect of the interfering factor on the result would be negligible. Moreover, three chemists, two witnesses for the Government and one for appellant, stated in effect that the presence of the interfering elements would tend to make the acetanilid content higher than it actually was. Since the adulteration found was a substantial deficiency in acetanilid and quinine sulphate, the error, if any, resulting from the presence of the interfering elements, would be favorable to appellant rather than prejudicial.

There is substantial evidence supporting the conclusion of the District Court that, with even applying the ten per cent. limit of tolerances in weight and medicinal content established by the national formulary, these deficiencies are too great to avoid violation of the statute. While the formula stated the amount of acetanilid to be one grain and the amount of quinine sulphate .625 grain, the testimony of the Government experts showed acetanilid, .83 grain, .827 grain, .85 grain and .84 grain. With reference to quinine sulphate the results were .56 grain, .540 grain, .555 grain, and .556 grain. Taking the highest result for acetanilid, .85 grain, this is a variation of fifteen per cent., well outside the ten per cent. tolerance limits contended for.

Since the statute (Title 21, U.S.C. § 10, 21 U.S.C.A. § 10) requires a specific statement as to content of acetanilid compounds, the intent of the company is not material. The long and reputable service of appellant has caused us to scrutinize this record with great care. We conclude that both on questions of fact and of law, the judgment of the District Court was not erroneous.

Judgment affirmed.