**UNITED STATES v. SULLIVAN.**

No. 3688.

District Court, M. D. Georgia,
Columbus Division.

June 19, 1946.

Jno. P. Cowart, U. S. Atty., and Jack J. Gautier, Asst. U. S. Atty., both of Macon, Ga., for the United States.

Hatcher & Hatcher, of Columbus, Ga. (J. Madden Hatcher, of Columbus, Ga., of counsel), for defendant.

DAVIS, District Judge.

This is a criminal prosecution by information in two counts,[1] charging violations

---

[1] Count I (charging part):

"That the Abbott Laboratories, trading and doing business at North Chicago, State of Illinois, did, within the period from on or about November 25, 1943 to on or about March 15, 1944, ship in interstate commerce from North Chicago, State of Illinois, to Atlanta, State of Georgia, consigned to the Abbott Laboratories, a number of boxes, containing a number of bottles, each bottle containing a number of tablets of a drug within the meaning of the Act of Congress of June 25, 1938, known as the Federal Food, Drug, and Cosmetic Act (52 Statutes at Large, 1040, 21 U.S.C.A. § 321 (g) (2);

"That one of said bottles containing said drug when shipped in interstate commerce, as aforesaid, was labeled, marked and branded by means of a label affixed thereto bearing the following printed and graphic matter, to-wit:

1000 Tablets (Bisected)

SULFATHIAZOLE

(2-sulfanilamidothiazole) 0.5 gm.

(7.7 grs.)

Abbott—List No. 3430

Caution—To be used only by or on the prescription of a physician.

Warning: In some individuals Sulfathiazole may cause severe toxic reactions. Daily blood counts for evidence of anemia or leukopenia and urine examinations for hematuria are recommended.

Physicians should familiarize themselves with the use of this product before it is administered. A circular giving full directions and contraindications will be furnished upon request.

F5 Serial No. 311T237

Abbott Laboratories

North Chicago, Ill., U. S. A.

"That thereafter, to-wit, on or about September 29, 1944, the said Abbott Laboratories at Atlanta, Georgia, did sell and deliver said bottle of said drug in the identical condition as when shipped in interstate commerce, as aforesaid, and labeled, marked and branded, as aforesaid to Jordan James Sullivan, an individual, operating under the name Lynwood Pharmacy, Columbus, Georgia, and the said Jordan James Sullivan transferred said bottle of drug and caused said bottle of drug to be transferred to Sullivan's Pharmacy, Columbus, Georgia, a pharmacy owned and operated by said Jordan James Sullivan;

"That on or about December 13, 1944, while a number of said tablets of said drug contained in said labeled bottle, as aforesaid, were being held for sale after shipment in interstate commerce, as aforesaid, at said Sullivan's Pharmacy the said Jordan James Sullivan did, at Columbus, Georgia, within the Columbus Division of the Middle Judicial District of Georgia and within the jurisdiction of this Court, then and there cause to be removed a quantity of said tablets of

of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 301 et seq. It is alleged in each count, in substance, that a drug manufacturer in North Chicago, Illinois, shipped in interstate commerce to its distributor in Atlanta, Georgia, a bottle containing 1,000 Sulfathiazole tablets; that the distributor thereafter sold and delivered said bottle of tablets to the defendant, the owner of drug stores in Columbus, Georgia; that while the tablets in said bottle were being held for sale at one of the defendant's drug stores, after shipment in interstate commerce, the defendant caused 12 tablets to be removed from the bottle and placed into a box and disposed of by sale; that the box into which the tablets were placed and which was sold bore only the label "Sulfothiazal", as described in Count One and "Sulfathiazole", as described in Count Two; that the act of removing, repacking, and disposal resulted in the drug being misbranded in two different respects under the Federal Food, Drug, and Cosmetic Act.

It is charged that these acts constitute violations of Section 301(k) of the Act, 21 U.S.C.A. § 331(k). The pertinent provision of this section of the Act is as follows: Section 301, 21 U.S.C.A. § 331: "The following acts and the causing thereof are hereby prohibited: * * * (k) The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to a, * * * drug * * *, if such act is done while such article is held for sale after shipment in interstate commerce and results in such article being misbranded."

The defendant filed a Motion to Dismiss setting forth four grounds: (1) the allegations of the information are insufficient as a matter of law to constitute any offense against the laws of the United States; (2) the alleged acts of the defendant were not in interstate commerce and were beyond the power of Congress to regulate, control, or punish; (3) the applicable provisions of the law only apply to misbranding in interstate commerce; (4) that if section 301(k) of the Act is construed as applying to the alleged acts of the defendant, said section is unconstitutional as being beyond the legislative power of Congress

drug, to wit, 12 tablets of said drug from said bottle labeled as aforesaid and sold and delivered, as aforesaid, and being held for sale as aforesaid, and did cause to be repacked said 12 tablets of said drug so removed into a box and did cause to be sold and disposed of the said box containing the said 12 tablets to one Joe P. Durham, solely upon the surrender by the said Joe P. Durham of money in payment therefor;

"That said box into which said 12 tablets were repacked was labeled, marked and branded with the following written and graphic matter, and no other, to wit: SULFOTHIZAL

"That said act of causing the removal, repacking and disposal, as aforesaid, resulted in said 12 tablets of drug being misbranded within the meaning of said Act of Congress (21 U.S.C.A. § 352(f) (1)), in that the labeling of said drug in said box failed to bear adequate directions for use, to wit, in that the said box containing said 12 tablets of drug, bore no labeling containing directions for use;

"That said act of causing the removal, repacking and disposal, as aforesaid, resulted in said drug in said box aforesaid being further misbranded within the meaning of said Act of Congress (21 U.S.C.A. § 352(f) (2)), in that the labeling of said drug failed to bear such adequate warnings against use in those pathological conditions where its use may be dangerous to health, and against unsafe dosage and methods and duration of administration, in such manner and form, as are necessary for the protection of users, in that the said box containing said tablets of drug bore no labeling containing warnings against use in those pathological conditions where its use may be dangerous to health, and against unsafe dosage and methods and duration of administration;

"That said act by said Jordan James Sullivan, the defendant herein, of causing the removal from said labeled bottle, repacking into said box labeled as aforesaid and disposing of said 12 tablets of said drug, as aforesaid, was an act done by said Jordan James Sullivan while said article of drug was being held for sale after shipment in interstate commerce, as aforesaid, which resulted in said 12 tablets of drug being misbranded, as aforesaid, in violation of said Act of Congress (21 U.S.C.A. § 331(k))."

Count II similar to Count I, except as to name of purchaser and relating to "Sulfathiazole" rather than "Sulfothiazal".

and an invasion of the reserved police powers of the states.

We will consider in this opinion (1) Whether Section 301(k) of the Act is a lawful exercise by Congress of its powers under the commerce clause of the Constitution; and (2) Whether the acts of the defendant alleged in the information are cognizable under this section of the Act.

(1) The Federal Food, Drug, and Cosmetic Act, passed in 1938, and its predecessor, the Food and Drug Act of 1906, 21 U.S.C.A. § 1 et seq., have been held to be lawful exercises by Congress of its power under the commerce clause of the Constitution. In Hipolite Egg Co. v. United States, 1911, 220 U.S. 45, at page 57, 31 S.Ct. 364, at page 367, 55 L.Ed. 364, in speaking of the 1906 Act, the court said: "The statute rests, of course, upon the power of Congress to regulate interstate commerce; and, defining that power, we have said that no trade can be carried on between the states to which it does not extend, and have further said that it is complete in itself, subject to no limitations except those found in the Constitution."

In United States v. Dotterweich, 1943, 320 U.S. 277, at page 280, 64 S.Ct. 134, at page 136, 88 L.Ed. 48, a case under the 1938 Act, the court said: "The Food and Drugs Act of 1906 was an exertion by Congress of its power to keep impure and adulterated food and drugs out of the channels of commerce. By the Act of 1938, Congress extended the range of its control over illicit and noxious articles and stiffened the penalties for disobedience."

It is well settled that congressional authority under the commerce clause includes the power to regulate intrastate activities which "affect" interstate commerce or which are in the "flow" of interstate commerce. It was said in State of Oklahoma v. Guy F. Atkinson Co., 1941, 313 U.S. 508, 526, 61 S.Ct. 1050, 1060, 85 L.Ed. 1487: "As repeatedly recognized by this Court from McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579, to United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, the exercise of the granted power of Congress to regulate interstate commerce may be aided by appropriate and needful control of activities and agencies which, though intrastate, affect that commerce."

In National Labor Relations Board v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 36, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893, 108 A.L.R. 1352, the court declared: "The congressional authority to protect interstate commerce from burdens and obstructions is not limited to transactions which can be deemed to be an essential part of a 'flow' of interstate or foreign commerce. Burdens and obstructions may be due to injurious action springing from other sources. The fundamental principle is that the power to regulate commerce is the power to enact 'all appropriate legislation' for its 'protection or advancement' * * *; to adopt measures 'to promote its growth and insure its safety' * * *; 'to foster, protect, control, and restrain'. * * * That power is plenary and may be exerted to protect interstate commerce 'no matter what the source of the dangers which threaten it.'"

The following recent cases have determined some phases of intrastate activities that are properly subject to federal control. Currin v. Wallace, 1939, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Mulford v. Smith, 1939, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; United States v. Rock Royal Co-operative, Inc., 1939, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; United States v. Darby, 1941, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; United States v. Wrightwood Dairy Co., 1942, 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726.

The authority of Congress over goods which have moved in interstate has operated to prevent numerous acts to those goods: e. g., the imposition of discriminatory taxes, Sonneborn v. Cureton, 1923, 262 U.S. 506, 43 S.Ct. 643, 67 L.Ed. 1095; the requirement of label removal, McDermott v. Wisconsin, 1913, 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754, 47 L.R.A.,N.S., 984, Ann.Cas. 1915A, 39; the receiving etc. of stolen motor vehicles, Brooks v. United States, 1925, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed.

196

699, 37 A.L.R. 1407; the placing of restrictions on an importer in selling an article in convenient containers, Baldwin v. Seelig, Inc., 1935, 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032, 101 A.L.R. 55.

That Congress in enacting Section 301 (k) of the Act intended to exercise its broad powers under the commerce clause is clearly expressed in the legislative history of the Act. In H.R.Rep. No. 2139, 75th Cong. (3rd Sess., 1938), submitted by the Committee on Interstate and Foreign Commerce to accompany S. 5, the bill which was enacted as the present Act, it was stated in speaking of Section 301: "In order to extend the protection of consumers contemplated by the law to the full extent constitutionally possible, paragraph (k) has been inserted prohibiting the changing of labels so as to misbrand articles held for sale after interstate shipment."

■ One of the purposes of the Federal Food, Drug, and Cosmetic Act is to "prevent the misuse of the facilities of interstate commerce in conveying to and placing before the consumer misbranded and adulterated articles of medicine or food". McDermott v. Wisconsin, 1913, 228 U.S. 115, 133, 33 S.Ct. 431, 434, 57 L.Ed. 754, 47 L.R.A.,N.S., 984, Ann.Cas.1915A, 39; United States v. Two Bags, etc., Poppy Seeds, 6 Cir., 1945, 147 F.2d 123, 127. This purpose could not have been accomplished if the provision now being considered had been omitted. Its absence would have made it relatively simple, in many instances, to render nugatory the misbranding provisions of the Act by simply shipping in interstate commerce properly labeled articles and misbranding them after the transportation had ended. Anticipating resort to such stratagem, whether as part of a scheme or not, Congress sought to prevent it by the enactment of subsection (k) which would preserve the integrity of labeling of an article that had been shipped in interstate commerce until it reached the consumer. "Any rule, * * * which is intended * * * to prevent the flow of commerce from working harm to the people of the nation, is within the competence of Congress." Mulford v. Smith, supra [307 U.S. 38, 59 S.Ct. 652].

■ That federal authority extends far enough to control the labels on goods being offered for sale to consumers after shipment in interstate commerce was decided in McDermott v. Wisconsin, supra. In that case a Wisconsin statute required that certain syrups bear labels prescribed in the statute and none other. McDermott, a retail merchant in Wisconsin, received from Chicago a box containing 12 cans of syrup, which he placed on the shelves of his establishment for retail sale. The label of the syrup, when received by McDermott, complied with the Federal Food and Drugs Act of 1906, but did not comply with the state law. In order to meet the state law requirements, the labels of the cans would have had to be removed and new ones substituted. In holding that the state could not require the removal of the label that met the requirements of the federal law, the court said at page 133 of 228 U.S., at page 435 of 33 S.Ct., 57 L.Ed. 754, 47 L.R.A., N.S., 984, Ann.Cas.1915A, 39 in speaking of the state law: " * * * to permit such regulation as is embodied in this statute is to permit a state to discredit and burden legitimate Federal regulations of interstate commerce, to destroy rights arising out of the Federal statutes which have accrued both to the government and the shipper, and to impair the effect of a Federal law which has been enacted under the Constitutional power of Congress over the subject."

By section 301(k) Congress has sought, not only to protect and foster interstate commerce, but also to prevent the impairment of the effect of other provisions of the Act. This it may lawfully do. "It is the law that when the Congress properly enters the field of its authorized activity it may not only adopt means necessary, but, in a like manner, means convenient to the exercise of its power". Board of Trade v. Milligan, D.C.W.D.Mo.1936, 16 F. Supp. 859, 861, affirmed 8 Cir., 90 F.2d 855, certiorari denied 1937, 302 U.S. 710, 58 S.Ct. 40, 82 L.Ed. 549.

■ In the McDermott case, the article that had been shipped in interstate commerce was subject to federal authority to the extent of prohibiting a state from interfering with its label. Such interference

by the state impinged upon one of the lawful means that Congress had selected for the protection of the consumer. By section 301(k) Congress seeks to prevent individuals from interfering with labeling of articles that have been shipped in interstate commerce. Since federal authority can require the preservation of labels on articles that have been shipped in interstate commerce, notwithstanding attempted state regulation, it is a corollary that federal authority may require individuals to preserve such labels and punish acts that result in such articles being misbranded.

In A. L. A. Schechter Poultry Corp. v. United States, 1935, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, cited and strongly relied on by the defendant, the Court drew the distinction between intrastate activities that directly affect interstate commerce and those that affect it indirectly. The court pointed out (295 U.S. at page 546, 55 S.Ct. at page 850) that the precise line, in determining how far the federal government may go, "can be drawn only as individual cases arise." The facts in the Schechter case, in which attempted regulations of intrastate activities were held to be beyond federal power, are clearly distinguishable from those in the instant case. There a "Live Poultry Code", which had been promulgated under the National Industrial Recovery Act, attempted to regulate almost every phase of the intrastate activities of the poultry business. These included hours, wages, labor conditions, number of employees, trade practices, etc. The regulations were general in nature and related to the conduct of the business, whether or not the commodity dealt with had been transported in interstate commerce. In holding that the regulations were invalid the court recognized (295 U.S. at page 544, 55 S.Ct. at page 849, 79 L.Ed. 1570, 97 A.L.R. 947) that it is the "effect upon interstate commerce" not "the source of the injury" which is the criterion of federal power. In the statute here assailed the very article on which the act was done which resulted in its misbranding must have moved in interstate commerce. To hold that Congress has no power to prohibit such wrongful acts would permit the use of the facilities of interstate commerce to place before the consumer misbranded goods. "The power to regulate interstate commerce includes the power to prohibit its use to facilitate wrongful and injurious acts or practices." Bailey v. United States, 10 Cir., 1934, 74 F.2d 451, 453.

An important Supreme Court pronouncement with respect to the Food and Drugs Act of 1906 appears in the dissenting opinion of Justice Holmes in Hammer v. Dagenhart, 1918, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, 3 A.L.R. 649, Ann.Cas.1918 E, 724. The majority opinion was recently expressly overruled by a unanimous Court in United States v. Darby, supra, 312 U.S. on page 115, 61 S.Ct. on page 458, 85 L.Ed. 609, 132 A.L.R. 1430 where the Court referred to "the powerful and now classic dissent of Mr. Justice Holmes". In his dissent in the Dagenhart case, Justice Holmes stated on page 279 of 247 U.S., on page 534 of 38 S.Ct., 62 L.Ed. 1103, 3 A.L.R. 649, Ann.Cas.1918F, 724: "The Pure Food and Drug Act which was sustained in Hipolite Egg Co. v. United States, 220 U.S. 45, 31 S.Ct. 364, 367, 55 L.Ed. 364, with the intimation that 'no trade can be carried on between the States to which it (power of Congress to regulate commerce) does not extend,' applies not merely to articles that the changing opinions of the time condemn as intrinsically harmful but to others innocent in themselves, simply on the ground that the order for them was induced by a preliminary fraud. Weeks v. United States, 245 U.S. 618, 38 S.Ct. 219, 62 L.Ed. 513. It does not matter whether the supposed evil precedes or follows the transportation. It is enough that in the opinion of Congress the transportation encourages the evil." Here Justice Holmes gave recognition to the proposition that in the Food and Drugs Act of 1906 Congress did not confine its regulation of interstate commerce in such merchandise to the period of transportation alone, but properly struck at evils intimately associated with such commerce, though they might arise prior or subsequent to the transportation.

By the statute here in question Congress has in effect declared that if the facilities of interstate commerce are used for the

shipment of goods, no person may thereafter, while the goods are being held for sale, do any act with respect to the goods which misbrands them. The mischief, which the statute seeks to prevent, has a direct effect on interstate commerce. To hold that Congress may not prevent such acts would permit the facilities of interstate commerce to be used to the detriment of the public.

So far as the Court is aware, there are only two reported cases that deal with the interpretation of this provision of the law. One of these cases is United States v. Lee, 7 Cir., 1942, 131 F.2d 464, 143 A.L.R. 1451, an injunction proceeding under section 302 of the Act, 21 U.S.C.A. § 332 to restrain, among other things, violations of section 301(k). The defendant there caused circulars to be printed in which false claims were made for his drug products and after the goods were shipped in interstate commerce the drugs and circulars were displayed together which resulted in the goods being misbranded. The Circuit Court, in holding that this was a violation of section 301(k) which could be restrained, said (131 F.2d page 466): "It (the Federal Food, Drug, and Cosmetic Act) was enacted to protect the public health and to prevent fraud, and it ought to be given a liberal construction. Consequently, we are impelled to the conclusion that misbranding is cognizable under the Act if it occurs while the articles are being held for sale."

The other case which deals with this provision of the law is United States v. 7 Jugs, etc., Dr. Salsbury's Rakos, D.C. Minn.1944, 53 F.Supp. 746, a seizure under the Act. The court there commented as follows (page 756): "This court does not in this proceeding propose to mark out the limits of Section 301(k). Seemingly, however, it was enacted by Congress under its authority to regulate activities affecting interstate commerce. See National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. In referring to alteration, mutilation, destruction, obliteration, or removal of labels, this section at least suggests the possibility that what it contemplates is a lawful use by a drug of the facilities of interstate commerce followed by some activity which causes it to be misbranded."

■ By the Federal Food, Drug, and Cosmetic Act, Congress has sought to prevent the use of facilities of interstate commerce in conveying to and placing before consumers adulterated and misbranded articles. That it may lawfully do this, the Court believes, is no longer open to question. Keeping within Constitutional limitation of authority Congress may determine for itself the means necessary to make its purpose effective. By section 301(k) Congress had exhibited the character of the means it deemed necessary to carry out its purpose, and the Court thinks it has kept within Constitutional bounds.

(2) The plan of section 301 of the Act clearly demonstrates the purpose of Congress. Subsection (a) prohibits the introduction into interstate commerce of an article that is misbranded at the time introduction takes place; subsection (b) prohibits the misbranding of an article in interstate commerce; subsection (k) prohibits the doing of any act with respect to an article after shipment in interstate commerce and while held for sale, that results in the article being misbranded.

It is unnecessary in considering this case to determine whether or not the articles on which the alleged acts were done were in interstate commerce at the time the misbranding took place. It might well be that in the instant case the article while on the shelf of the retailer was in interstate commerce. If this were so, the acts done might be acts of misbranding in interstate commerce, and a violation of Section 301(b). The situation set forth in subsection (k) "while such article is held for sale after shipment in interstate commerce", does not preclude the possibility that the article at the same time may be in interstate commerce. But, under section 301(k) it is sufficient to show interstate shipment of the article and the doing of the prohibited act while the article was held for sale. It is apparent that Congress intended to preserve the integrity of the labeling of an article that had been shipped in interstate commerce until it reached the consumer,

even though the article was no longer in interstate commerce.

The information charges that the act of the defendant, in causing the removal, repacking, and disposal of the tablets, resulted in the drug being misbranded within the meaning of 21 U.S.C.A. § 352(f) (1) and (2). These provisions are as follows: "A drug or device shall be deemed to be misbranded—(f) Unless its labeling bears (1) adequate directions for use and (2) adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health, or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users: Provided, That where any requirement of clause (1) of this paragraph, as applied to any drug or device, is not necessary for the protection of the public health, the Administrator shall promulgate regulations exempting such drug or device from such requirement."

It will be observed from the allegations of the information that the bottle containing the tablets, which was shipped in interstate commerce, did not bear adequate directions for use but bore the so-called "prescription legend". The regulation promulgated under the proviso of 21 U.S.C.A. § 352(f) exempted this article from bearing adequate directions for use. This regulation in effect at the time of the alleged violation,[2] 21 C.F.R.Cum.Sup. Sec. 2.106(b) provided, among other things that a shipment of a drug shall be exempt from bearing adequate directions for use if it is made for use exclusively by or on prescriptions of physicians and bears the "prescription legend". The exemption is to remain effective until the drug is dispensed upon and under labels bearing the directions for use specified in prescriptions of physicians. This regulation as it affects the present case would require the drug to be sold on a physician's prescription and to bear the directions for use specified in the prescription. The "prescription legend" is not a substitute for adequate directions for use.

The bottle containing the tablets of drug when shipped in interstate commerce, traveling under the exemption, was labeled to comply with the law. It is charged what the act of the defendant in causing the removal, repacking and disposal of the tablets of drug in a container bearing only the written matter "Sulfothiazal" or "Sulfathiazole" resulted in its misbranding.

■ It was strongly contended here by the defendant that the acts which are alleged to constitute the violation were not one of those particularly enumerated in the statute, viz: "alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling." This argument is untenable for two reasons. First, such acts are in fact alteration or obliteration of part of the label, and second, such acts, if not one of those enumerated, is the doing of some other act, other than those enumerated, with respect to the drug.

The bottle label which was proper bore considerable printed matter, including the name of the drug "Sulfathiazole" and the "prescription-legend", and required warnings. Clearly, if part of the label had been obliterated, leaving only "Sulfathiazal", misbranding would have resulted. Likewise, if the article is repacked into a container which bears only the printed matter "Sulfathiazal", there is equally a violation as being a combination of obliteration and alteration of the label.

Apart from this, the language of the statute "or the doing of any other act with respect to a * * * drug", includes any other act other than those enumerated in the opening clause of subsection (k). No restriction is made as to the character of the act prohibited, except that it must be "with respect to" the drug. Had it been the intention of Congress to prohibit acts upon the article itself, or to the original container, it would have been sufficient to prescribe any other act to the article. Instead, however, the more inclusive term "with respect to" was used. Not only are acts done to the article itself prohibited, but all acts falling within the larger category are prohibited by the statutory

---

[2] A new regulation with somewhat modified provisions concerning exemptions under this section became effective on October 10, 1945.

language. In United States v. Lee, supra, the court held that displaying circulars which contained false and misleading statements together with drugs that had been shipped in interstate commerce and resulted in the drugs being misbranded was cognizable under this section of the act.

■ The design of Congress "to extend the protection of consumers contemplated by the law to the full extent constitutionally possible" is clearly expressed in the legislative history. Congress in section 301(k) did not use any language that would indicate that "held for sale after shipment in interstate commerce" referred to the original consignee, or while the article was in original unbroken packages, unloaded, or unsold. Congress used the broad language "while * * * held for sale." In order to give effect to the purposes of the Act, the protection of the consumer, the prohibitions relating to the article must go along with it while it is being held for sale by anybody, whether the original interstate consignee, wholesaler, distributor, or retailer. The article in the hands of any dealer and until it reaches the ultimate consumer is being held for sale. This thought as it applied to producers was expressed by the Court in Hipolite Egg Co. v. United States, supra, where it was said: "All articles, compound or single, not intended for consumption by the producer, are designed for sale, and, because they are, it is the concern of the law to have them pure."

Obviously, the defendant in this case, a retail druggist, who is charged with doing the prohibited acts, from the time he received the article until it was disposed of was holding it for sale. The buying of drugs and holding them for sale was part of his business. The language of the statute coupled with the statement from the legislative history, read in the light of the purposes of the Act, affords, in this court's opinion, no room for doubt that the acts charged are within the meaning and purpose of the statute.

■ The defendant in this case, as retail druggists generally do, obtained his supply from a distributor within the state. If section 301(k) is limited to a situation where the drugs which are being held for retail sale were received directly from outside the state, the protection of the public will be extensively curtailed. If retailers find that they can evade federal jurisdiction by purchasing drugs through local wholesalers, after receipt by the latter in the channels of interstate commerce, this provision of the act is nullified and the statute rendered partly ineffective. A statute should not be construed as to render it partly ineffective or inefficient or to cause public injury or inconvenience, if it can be construed in a way that will make it effective. United States v. Powers, 1939, 307 U.S. 214, 59 S.Ct. 805, 83 L.Ed. 1245; Bird v. United States, 1902, 187 U.S. 118, 23 S.Ct. 42, 47 L.Ed. 100; Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263.

The Supreme Court in United States v. Antikamnia Chemical Co., 1914, 231 U.S. 654, 667, 34 S.Ct. 222, 226, 58 L.Ed. 419 said of the Food and Drugs Act of 1906: "The purpose of the law is the ever insistent consideration in its interpretation."

And in United States v. Dotterweich, supra, the Court said of the present Act: "The purposes of this legislation thus touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection. Regard for these purposes should infuse construction of the legislation, if it is to be treated as a working instrument of government and not merely as a collection of English words."

■ In construing section 301(k) the Court should be guided by the purposes of the Act, the intention of Congress therein evidenced, and seek to make that intention effectual. United States v. Stone & Downer Co., 1927, 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013; Rogers v. Peck, 1905, 199 U.S. 425, 26 S.Ct. 87, 50 L.Ed. 256. The Court should look to the policy of the legislation as a whole, the reason for its enactment and its antecedent history and give it an effect in accordance with its design and purpose, so that its purpose may not fail. Ozawa v. United States, 1922, 260 U.S. 178, 43 S.Ct. 65, 67 L.Ed. 199; United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. Regard

should also be had to the evils which called forth the statute (Fasulo v. United States, 1926, 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443), and a construction should be adopted which serves to correct the evil and defeat the wrong it was its purpose to frustrate. Bernier v. Bernier, 1893, 147 U.S. 242, 13 S.Ct. 244, 37 L.Ed. 152; Rhodes v. Iowa, 1898, 170 U.S. 412, 18 S.Ct. 664, 42 L.Ed. 1088.

The Federal Food, Drug, and Cosmetic Act is a remedial statute, intended to protect the public health and pocket book, and should be liberally construed. United States v. Dotterweich, supra; United States v. Two Bags, etc., Poppy Seeds, supra, United States v. 7 Jugs, etc., Dr. Salsbury's Rakos, supra; United States v. Research Laboratories, 9 Cir., 1945, 126 F.2d 42; United States v. Commercial Creamery Co., D.C.E.D.Wash.1942, 43 F.Supp. 714.

So construing section 301(k) of the Act there can be no doubt that the acts of the defendant alleged in the information constitute violations of those provisions of the law.

The defendant's motion to dismiss will be denied.